[Civ. No. 7336.   Third Dist.   June 13, 1947.]

DANIEL W. SOOY, Respondent, v. MARIE KUNDE et al.,
Appellants.

De Meo & De Meo, Charles De Meo, J. N. De Meo and M. K. Taylor for Appellants.

Charles D. Sooy, John Moskowitz and Geary & Tauzer for Respondent.

SCHOTTKY, J. pro tem.—This is an appeal from a judgment for the specific performance of an option to purchase 75.5 acres of land in Sonoma County.

On December 24, 1936, Marie Kunde, by an instrument in writing, leased the property in controversy to respondent for a term of thirty years at a yearly rental of $25. Included in the lease was an option to purchase said real property at any time during the term of the lease for the sum of $1,000, the recited consideration for the option being $1.00.

Thereafter, on February 27, 1937, Marie Kunde entered into an agreement for the sale of a larger parcel of land which included the leased property hereinbefore referred to, to her son, appellant Arthur Kunde, for the sum of $7,000. On June 27, 1944, appellant Arthur Kunde paid off the balance of $6,584.68 then due under said agreement of sale.

On August 4, 1944, respondent exercised his option to purchase said 75.5 acres by mailing letters so stating to

Marie Kunde and Arthur Kunde. By a deed dated August 8, 1944, and recorded August 9, 1944, Marie Kunde conveyed to appellant Arthur Kunde the property described in said agreement of sale, including the 75.5 acres leased to respondent. Thereafter respondent filed this action against Marie Kunde, Arthur Kunde and Catherine Kunde, wife of Arthur Kunde, but Marie Kunde having died prior to the commencement of the action, the executrix of her will was substituted in her stead.

Appellants in their answer did not deny the execution of the lease by Marie Kunde but denied that she knew of the option to purchase contained therein. Appellants denied also that the option agreement was fair and reasonable and alleged affirmatively that Marie Kunde was at the time of the execution thereof an elderly woman, in ill health and without sufficient mental capacity to enable her to understand the terms of said lease and particularly the option contained therein.

The trial court found that following the execution of said lease respondent entered into possession of said 75.5 acres and constructed improvements thereon of the value of $30,000; that the option to purchase was exercised by respondent on August 4, 1944; that appellants Arthur Kunde and Catherine Kunde knew of and participated in the negotiation leading up to the execution of the lease; that subsequent to the exercise of his option to purchase by respondent and the demand for a conveyance made upon her by respondent, Marie Kunde conveyed all of her interest in said premises to appellant Arthur Kunde and Catherine Kunde; that the sum of $1,000 was at the time of the execution of the lease and now is in excess of the fair and reasonable value of the property, excluding the improvements made by respondent; that no unfair advantage was taken of Marie Kunde; that she was represented by her own counsel; that she was in full possession and control of normal mental and physical powers at the time of the execution of said instrument and that she knew and understood that the lease contained an option to purchase and discussed same with appellant Arthur Kunde and her attorney, and that the lease and option agreement was just and equitable.

Appellants make a vigorous attack upon the findings and the judgment and contend that the evidence is insufficient to support them. Before discussing the specific contentions of appellants we shall summarize briefly the facts shown by the record, disregarding all conflicts in the evidence and in-

dulging in all reasonable inferences to support the judgment.

Sometime in the spring or early summer of 1936, Dr. Sooy first met Arthur Kunde and inspected the real property here involved. He learned that Marie Kunde, Arthur's mother, owned an undivided one-half interest in the "Clark Ranch," and Arthur Kunde owned a life estate in the other one-half interest with the remainder vested in his several children, then minors. After some discussion between Dr. Sooy and Arthur Kunde about a lease of a portion of the Clark Ranch, a meeting was arranged between H. W. A. Weske, the Kunde family attorney of long standing, Dr. Sooy, Marie Kunde and Arthur Kunde. At this meeting, which took place in August, 1936, four months before the lease was signed, a partition of the Clark Ranch was discussed. Weske advised Dr. Sooy that Marie Kunde, widow of Charles Louis Kunde, and Arthur Kunde and Arthur's heirs had acquired the Clark Ranch from Charles Louis Kunde upon the latter's death. The interests of Arthur's minor children made a lease impractical, so the parties discussed a division of the ranch which would give Arthur Kunde and his children the valuable flat part of the ranch containing the vineyard, orchard, redwood grove and buildings, and give Marie Kunde the larger share but less desirable hill land, a portion of which Dr. Sooy wished to lease. Subsequently Weske brought and concluded the friendly partition suit which effected a division of the undivided interests in the Clark Ranch, as above outlined. This was satisfactory to all parties, especially since it furthered Marie Kunde's wishes to give her son Arthur and his children the valuable part of the ranch and also because Dr. Sooy agreed to pay all the expenses of survey and the attorney's fees incurred in the partition suit. After the partition, Dr. Sooy caused a proposed lease and option to purchase to be drawn and submitted it to Arthur Kunde and Marie Kunde in a meeting held December 18, 1936, with Weske in Santa Rosa. At this meeting Weske read the proposed lease, paragraph by paragraph, in the presence of Arthur Kunde, Marie Kunde and Dr. Sooy. At this time no option price was filled in and the lease provided for the signature of both Arthur Kunde and Marie Kunde as lessors. There was a discussion of several portions of the proposed lease at this meeting of December 18, 1936. A grant of easement for telephone and power lines across the land awarded to Arthur Kunde was contained in the proposed lease and option. This was taken out of the final lease and

made the subject of a separate grant of easement. The amount of the rental was set and agreed upon. There was also a discussion of certain hunting rights which Arthur Kunde wished to reserve to himself and his children in the lease. On this same day, December 18, 1936, there also was considerable discussion regarding the purchase price of the 75.5 acres to be inserted in the option provision. Arthur Kunde said $10 per acre or $755 would be about right and Dr. Sooy said the amount might well be the round figure of $1,000. Marie Kunde assented to this amount and Arthur Kunde made no objection.

After the amendments to the first draft of the lease Weske redrafted the lease and prepared the separate grant of easement. The same parties met again with Marie Kunde's attorney Weske, on December 24, 1936, at which time Weske again read the final lease and option agreement to Dr. Sooy and Marie and Arthur Kunde.

The lease and option to purchase was signed, acknowledged and delivered December 24, 1936.

The area of the entire Clark Ranch was approximately 180 acres. The portion Marie Kunde received on the partition was 128.5 acres, of which Dr. Sooy leased 75.5 acres. This 128.5 acres is the land which Arthur Kunde on February 27, 1937, agreed to purchase from his mother after the lease to Dr. Sooy was signed and recorded. The greater portion of the 53 acres of this 128.5 acres, which was not leased to Dr. Sooy, was flat tillable land, accessible to a county road and had some vineyard on it. The other portion of the Clark Ranch which was awarded to Arthur Kunde in the partition action was about 50 acres in extent and contained more vineyard, and orchard, a redwood grove and buildings.

Arthur Kunde granted Dr. Sooy an easement for power and telephone lines over his 50-acre portion of the Clark Ranch. Dr. Sooy's right of way was on the property owned by the lessor, Marie Kunde, and was contained in the lease. The grant of easement was made at the same time and place the lease was signed.

The property at the time of the execution of the lease was unimproved country land, mostly hilly, removed from the highway, without water or other utilities, and unsuited for grazing or cultivation.

After the execution of the lease and option Dr. Sooy entered into possession and during the period of almost nine

years made valuable and permanent improvements, at a total cost to him of approximately $30,000. All this work was done with the full knowledge of appellant Arthur Kunde, who raised no objection.

Other facts will be set forth in the course of this opinion.

■ Appellants' first contention is that Marie Kunde did not realize that the option to purchase was in the lease agreement. To support their contention appellants refer to the testimony as to conversations between Arthur Kunde and respondent prior to the execution of the lease when Arthur Kunde stated that the property was not for sale because he had a life estate as to an undivided one-half interest therein. They also point to testimony that Marie Kunde later sold the property to her son and that the attorney who drew up the lease also prepared the later contract of sale. Respondent in reply cites evidence that the lease was read twice to all parties, that there was discussion by the parties as to the option price, that the lease was recorded and that prior to the execution of the lease there was a friendly suit between Marie Kunde and appellant Arthur Kunde in order that a part of the property could be sold. The evidence further shows also that Weske, the attorney who drew the lease, was Marie Kunde's attorney and had been the attorney for the Kunde family for many years. There certainly is nothing in the record to justify the assertion of appellants that Marie Kunde did not understand the transaction or that any unfair advantage was taken of her, and the findings of the trial court negativing those contentions are fully sustained by the record.

■ Appellants next contend that the physical and mental condition of Marie Kunde was such at the time of the execution of the lease that she was unable to handle her affairs. Appellants do not contend that Marie Kunde was insane at the time but assert that her condition was such that she could not fully comprehend the transaction. Appellants point to evidence introduced by them as to paralytic strokes suffered by Marie Kunde, to her age of 71 years, and that her daughter did her bookkeeping. It must be stated that the evidence tending to show any mental incapacity of Marie Kunde is exceedingly weak and that it is contradicted by the testimony of respondent, a physician, that she was fully competent at the time. It is clear, therefore, that there is ample evidence to sustain the finding of the trial court that Marie Kunde was in full possession and control of normal,

physical and mental powers at the time of the execution of said instrument and fully understood the transaction.

■ Appellants contend also that respondent delayed too long before exercising his option. It is a sufficient answer to this contention to state that the option was exercised within the time specified in the written agreement.

■ Appellants next contend that specific performance should be denied upon the ground that the consideration was inadequate. It is of course true that under section 3391 of the Civil Code, specific performance will be denied "If he has not received an adequate consideration for the contract." Appellants then argue that the property was worth much more than the $1,000 option price on the date of the lease and is worth much more now. They point to evidence of the scenic value of the property and to evidence of their expert witnesses and of appellant Arthur Kunde that the property was worth in excess of $3,500. They concede that respondent's witnesses placed the value at less than $1,000 but assert that these witnesses assumed that there was no adequate water supply. However, there was conflicting evidence also as to the extent of the water supply, and taking the entire evidence upon the issue of the adequacy of the consideration, we can only conclude that it is highly conflicting and that the finding of the trial court that "the sum of One Thousand Dollars ($1,000.00) . . . was at the time of the execution of the lease . . ., and it is now in excess of the fair and reasonable value of the said property, excluding the improvements made by plaintiff," finds substantial support in the record.

■ Appellants also contend that the consideration for the option was inadequate because the rental paid for the premises was too insignificant to support a right to purchase, that it was less than the rental value of the property, and that the consideration of $1.00 for the option is divisible from the lease. But here again appellants are confronted with a conflict in the evidence as to the rental value of the land, and there is ample evidence to support the conclusion that at the time the lease and option were executed the land in question had little, if any, rental value in its then state.

The foregoing contentions of appellant deal with the asserted insufficiency of the evidence and, in urging them, appellants argue the weight of the evidence and the credi--

bility of the various witnesses rather than the insufficiency of the evidence. Notwithstanding the apparent earnestness of counsel for appellants, we are constrained to state that such an argument is properly addressed to a trial judge whose duty it is to weigh the evidence, but that it serves no useful purpose in an appellate tribunal which may not concern itself with mere conflicts in evidence. The most casual reading of the record will show that there is ample evidence to sustain the findings of the trial court and it is elementary that when a judgment is attacked as being unsupported by the evidence, the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trial court. (*Juchert* v. *California Water Service Co.*, 16 Cal.2d 500, 503 [106 P.2d 886]; *De Young* v. *De Young*, 27 Cal.2d 521, 526 [165 P.2d 457].)

Appellants' contention that respondent has an adequate remedy because he may at the termination of his lease sue for breach of contract, is so utterly without merit as to require no comment.

Appellants next contend that the trial court committed prejudicial error in excluding the testimony of the witness Irving Shepard as to the value of the property in controversy. The court refused to permit the witness Shepard, who was called by appellants, to testify as to the value of the property upon the ground that he was not qualified. The witness was a rancher who lived several miles from the property in question and was the manager of the Jack London estate which borders in both sides of the property in question. The witness stated that he was not an expert on land values but that he was familiar with three sales of improved land in the general area. The trial judge, in explaining his ruling excluding the evidence, stated:

"I don't understand the rule to confine it to ownership of property touching the borders of the property sold, nor did I base my ruling upon the ground that he is not the holder of a real estate license, entitling him to act as a broker or salesman. I realize that people can be expert within the purview of the law governing expert testimony without having to be owners of the property in question themselves, without having to own property touching upon its borders, and without having to be engaged in the profession involved. But here your foundation was that he had been engaged in farm management of properties in the general vicinity, that

he was familiar with three sales which he had conducted himself from the properties which he had managed, and one sale of property that he had made himself, improved farm property on a county road some three miles distant, that he himself stated he didn't pretend to be a real estate expert on real estate values. In other words, that he was just a farmer in the neighborhood in general and I didn't think that he was qualified to permit the Court to properly exercise its discretion to admit the opinion evidence. I think it would be quite dangerous to do so, because the foundation laid, indicated very strongly that his principal opinion, was based upon a specific transaction. The law is quite definite in saying that evidence of a specific transaction cannot be received as a part of the evidence in chief on proof of values, nor, by the same token, can the testimony of experts, who based their opinion on certain specific transaction. I think the ruling was correct on the basis of the foundation laid.''

The determination of the qualifications of a witness to testify concerning the value of land is addressed to the trial judge and is largely subject to his sound discretion. In the absence of clear abuse of that discretion the determination of the trial judge that such a witness is or is not qualified to testify as to the value of the land in question will not be disturbed on appeal. The value of the land is essentially a question of opinion to be established by expert testimony. It is not sufficient that a farmer may have general knowledge of real estate values. He must be familiar with the market price of similar land in the same neighborhood and he should be acquainted with the property involved in the action. He should possess special knowledge regarding the particular land in question which should enable him to form an intelligent and fairly accurate estimate of the actual market value of the land.

In *Vallejo & Northern R. R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545, the court said, at page 575 [147 P. 238] :

''The question whether or not a witness is qualified to give his opinion, as evidence upon a matter in issue, is submitted to the trial judge in the first instance, and is to be determined by him before such opinion may be given. (*Fairbank* v. *Hughson*, 58 Cal. 314.) It is, in itself, in the nature of a trial of a question of fact, by evidence addressed to the judge alone, and, as in other decisions on questions of fact by a trial court, his ruling thereon is a matter of discretion and will not be overturned on appeal unless there was an actual

want of evidence to support it or a clear abuse of discretion in ruling upon the evidence given on the subject. (*Howland* v. *Oakland etc. Co.,* 110 Cal. 521, [42 P. 983]; *Mabry* v. *Randolph,* 7 Cal.App. 427, [94 P. 403].)''

It is true, as stated by appellants, that a witness need not be an expert in the strict sense in order to be competent to express an opinion as to land values. As stated in 18 American Jurisprudence at page 999:

''Opinion evidence is also usually admitted from persons who are not strictly experts, but who from residing and doing business in the vicinity have familiarized themselves with land values and are more able to form an opinion on the subject at issue than citizens generally. This rule is liberally applied in the case of farm lands, as other evidence is often not easily obtained and neighboring farmers are able to judge value with reasonable accuracy, if acquainted with the physical surroundings and the character of the soil.''

But upon the record here we do not believe that the trial court abused its discretion in excluding the opinion of the witness Shepard as to the values of the land.

Furthermore the record shows that appellants produced three other witnesses whose qualifications were not challenged and who testified as to the value of the property. In view of the fact that the trial was before the court without a jury it is difficult to understand how appellants could be prejudiced by the exclusion of Shepard's opinion as to value, even if such exclusion was erroneous.

The final contention of appellants is that the trial court committed prejudicial error in considering his purported personal knowledge of the condition of Marie Kunde. Upon an objection to the manner of stating a question asked by the trial judge of the appellant Arthur Kunde, the judge stated: ''I happen to have known this woman and I would like to examine on this score.'' Some of the questions which follow this remark indicate that the judge had seen Marie Kunde on a number of occasions.

Appellants cite 10 California Jurisprudence 697, section 24, where it is stated:

''Actual knowledge by a trial judge of a fact, and that the fact is indisputable, does not justify him in taking notice thereof, unless the fact is also a matter of common knowledge.''

Appellants also cite 113 American Law Reports 258, where it is stated:

"Individual and extrajudicial knowledge on the part of a judge will not dispense with proof of facts not judicially cognizable, and cannot be resorted to for the purpose of supplementing the record."

The mere fact that the trial judge may have known Marie Kunde and observed her on a number of occasions does not indicate that he relied upon such knowledge or took judicial notice thereof and there is nothing in the record to support such a conclusion. It certainly was not necessary in the instant case for the trial judge to rely upon any personal knowledge, because we do not believe that there is sufficient evidence in the record to justify any finding that Marie Kunde was incompetent or incapable of understanding the agreement she signed.

In view of the foregoing we conclude that the record supports the findings and judgment of the trial court, that no prejudicial error has been committed and that the judgment should be and is hereby affirmed.

Adams, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied July 8, 1947, and appellants' petition for a hearing by the Supreme Court was denied August 7, 1947.