[Civ. No. 19700.   First Dist., Div. Two.   Jan. 15, 1962.]

CENTERVILLE AMUSEMENT COMPANY, Plaintiff and Respondent, v. HARRY SALIH et al., Defendants and Appellants.

Eugene K. Lawlor for Defendants and Appellants.

Michael N. Khourie for Plaintiff and Respondent.

SHOEMAKER, J.—Plaintiff Centerville Amusement Company, a corporation, brought this action against defendant Harry Salih, and all those claiming under him, to obtain reformation of a deed to certain real property, a reconveyance of said property, and an injunction restraining defendants from interfering with plaintiff's use or possession of said property.

The record shows that plaintiff is a family corporation which owns and operates the Center Theatre in Centerville, California. In May of 1952, the directors of plaintiff corporation consisted of Fred Salih, Lee Salih, the defendant Harry Salih, and Kenneth Salih. Fred, Lee and Harry Salih were brothers, and Kenneth Salih was the son of Harry Salih. These four

men were also at that time the sole partners of Salih Bros., a copartnership which controlled the stock of plaintiff corporation. On May 24, 1952, all four directors were present at a stockholders meeting of plaintiff corporation, where it was decided that financial losses suffered by the Center Theatre made it advisable to partially liquidate the corporate assets. Defendant Harry Salih and his family were then living on certain real property owned by the corporation, and the directors wished to protect Harry's right to continue to reside there. Since the real property in question adjoined the Center Theatre, the directors wished to reserve the use of a parking lot on the property for as long as any of the members of the Salih family still owned interests in the theater. A resolution was then passed that the house be deeded to defendant Harry Salih and that, by a separate instrument, the right to use the parking lot be reserved to the theater.

Fred Skaff, the attorney for plaintiff corporation, then prepared certain instruments whereby the specified real property was deeded from the corporation to the copartnership of Salih Bros., and from the copartnership to defendant Harry Salih.[1] At the same time, Mr. Skaff prepared another instrument whereby Harry Salih agreed that plaintiff corporation and Salih Bros., a copartnership, should have the right to continue to use the parking lot without rental ''so long as said Centerville Amusement Company or said Center Theatre is owned by said Salih Bros., a copartnership.'' These three instruments were duly executed by the parties.

Thereafter, in 1954, Kenneth Salih withdrew from the partnership, and on July 12, 1955, Fred Salih died. Fred Salih's interest in the partnership assets was purchased by Lee and Harry Salih. Disagreements subsequently arose between Lee and Harry Salih, and the latter eventually filed an action to dissolve the partnership. On March 20, 1957, prior to commencing that action, defendant Harry Salih placed a chain across the parking lot entrance and has since continued to prevent the patrons of the Center Theatre from using the lot. A final decree of dissolution was filed on April 14, 1958, and the partnership assets were duly apportioned.

Plaintiff corporation then commenced the instant action, alleging that, through mutual mistake of the parties, the instrument wherein defendant Harry Salih granted plaintiff

---

[1] There appears to be no reason why the property was conveyed through the copartnership other than that ''it keeps . . . everything straight.''

corporation and Salih Bros. the use of the parking lot did not express the true agreement of the parties, in that it erroneously provided that such use should continue only until the original copartnership of Salih Bros. ceased to own plaintiff corporation or the Center Theatre. Plaintiff further alleged that the real property was deeded to defendant only on the understanding that it would be held in trust for the benefit of plaintiff and would be deeded back upon plaintiff's demand. Plaintiff therefore sought reformation of the contract granting use of the parking lot and a reconveyance of the real property deeded to defendant.

At the conclusion of the trial, had without a jury, judgment was entered that the deed from plaintiff to the copartnership and the subsequent deed from the copartnership to defendant Harry Salih be reformed to provide that the plaintiff shall have the right to use the parking lot area without rent "so long as either Harry Salih or Lee Salih own a substantial interest in said Center Theatre, by reason of ownership of stock in the Centerville Amusement Company, a corporation . . ." The judgment further provided that defendant Harry Salih was *to have the privilege of living* on the remainder of the property and was to receive any income from the improvements located thereon. The court also enjoined defendants from interfering with plaintiff's use of the lot. Defendants now appeal from this judgment.

■■ Appellants first contend that the trial court erred in reforming the deeds to provide that respondent's parking lot easement should continue for as long as Lee or Harry Salih owned stock in respondent corporation. It is appellants' position that an instrument may only be reformed in such a way as to express the mutual understanding of the parties. If no understanding was ever reached by the parties, there could be no standard to which the writing could be reformed. Appellants thus maintain that the evidence is insufficient to support a finding that the parties ever agreed that respondent's easement should continue until Lee and Harry Salih ceased to own a substantial interest in respondent corporation.

The evidence supports the finding that the parties' intent was to reserve an easement in favor of respondent which would endure for as long as any one of the Salih brothers still owned a substantial amount of stock in respondent corporation. The deposition of Fred Skaff alone is sufficient to justify such a reformation of the terms of the easement; Mr. Skaff deposed that he was the attorney for respondent cor-

poration in May of 1952, and attended the stockholders meeting held on May 24, 1952; that the directors resolved at this meeting to deed certain real property to appellant Harry Salih; that the directors agreed that this deed was to include a reservation of the use of the parking lot for the benefit of the theater ''so long as any of the Salih brothers were interested in the theater, . . .'' and that when he prepared the instrument setting forth the easement, he used his own words, but believed that he was carrying out the above-stated intention of the directors. Mr. Skaff further stated that it was his own decision to use the words ''Salih Bros., a copartnership'' rather than ''Salih brothers,'' because the partnership had been in existence for years and ''it just wasn't conceivable that Salih Bros. would ever be terminated in any way, other than by death.'' The deposition of Mr. Skaff thus clearly indicates that the directors of respondent corporation had all arrived at an agreement as to the desired duration of the easement. Due to an inadvertence on the part of their corporate attorney, the easement, when ultimately drafted, failed to express this agreement. The fact that this instrument was executed by the parties without any of them knowing or suspecting that it did not accurately express their agreement is readily understandable. The record shows that the directors of respondent corporation were men of little educational background or familiarity with the law. Of the two directors who participated in the trial, Harry Salih testified that he could neither read nor write, and the testimony of Lee Salih indicated that he had little understanding of legal technicalities. Lee Salih testified that he had relied on the skill and judgment of his attorney and that he had believed that the easement as executed provided that respondent corporation would retain the use of the parking lot for as long as he or any of his brothers owned stock in respondent corporation. The facts indicate that none of the parties ever doubted that the easement properly expressed their agreement until March 20, 1957, when appellant Harry Salih chained off the lot and prevented respondent from continuing to use it.

Under these circumstances, respondent was entitled to have the terms of the easement reformed. In *Caviglia* v. *Jarvis* (1955) 135 Cal.App.2d 415 [287 P.2d 525], the trial court granted reformation when it found that a promissory note drawn by an aged attorney did not truly express the agreement between the parties. In affirming the judgment on appeal, the court pointed out that it was the duty of the trial

court, pursuant to Civil Code, section 3399, to reform instruments to express the actual understandings of the parties. Here, the evidence discloses that the easement, as drawn by Mr. Skaff, failed to express the actual agreement of the parties. There was also evidence that the true intent of the parties was to create an easement which would continue until all of the Salih brothers had ceased to own a substantial amount of stock in respondent corporation. Since Lee and Harry Salih are the last of the brothers and since they have both retained interests in respondent corporation, the trial court was correct in reforming the deeds to provide that the easement would endure for as long as Lee or Harry continued to retain their interests.

Appellants' second and final contention is that the effect of the trial court's judgment is to create a life estate in appellant Harry Salih. Appellants maintain that such a result finds no support in the evidence and is in direct conflict with one of the trial court's findings of fact. An examination of the trial court's findings of fact, conclusions of law, and judgment, does reveal certain contradictions and inconsistencies. The trial court first found that respondent corporation resolved to deed the specified real property to the copartnership "for the sole and express purpose of deeding same to defendant HARRY SALIH so as to vest title in HARRY SALIH, *in fee*, subject to an easement for parking lot and incinerator use purposes . . ." (Emphasis added.) In a subsequent finding, the court stated that the parties had verbally agreed that the parking lot was to be held by Harry Salih for the benefit of respondent "and *with the privilege* of defendant, HARRY SALIH, to live on the remaining portion thereof in consideration of said HARRY SALIH paying the taxes and other charges thereon." At still another point, the court found that the parties orally agreed "That HARRY SALIH was *to have the privilege* of living on the remainder of said property, . . . and receive any income from such improvements located thereon so long as either Harry Salih or Lee Salih own a substantial interest in said Center Theatre by reason of ownership of stock in the Centerville Amusement Company, a corporation." (Emphasis added.) In its conclusions of law and its judgment, the court again stated that Harry Salih was "to have the privilege" of living on the property and receiving income from the improvements. The judgment itself refers to the deed "vesting title in fee in Harry Salih."

The courts have repeatedly held that a party is entitled to specific findings on every material issue presented by the pleadings. (*San Jose etc. Title Ins. Co.* v. *Elliott* (1952) 108 Cal.2d 793, 802 [240 P.2d 41]; *Flennaugh* v. *Heinrich* (1948) 89 Cal.App.2d 214, 222 [200 P.2d 580].) It is equally well established that such findings should be clear and intelligible. In *Andrews* v. *Cunningham* (1951) 105 Cal. App.2d 525 [233 P.2d 563], the court reiterated the rule that findings are required on all material issues raised by the pleadings and evidence, and then went on to state, at pages 528-529: "It is the equally well settled rule that 'findings of fact should be definite and certain. They should be so framed that the defeated party can specify intelligibly the particulars in which they are not supported by the evidence, where such point is made.' (24 Cal.Jur. 963-964.) So '[w]here there are contradictory findings about matters material to the merits of a case, and the determination of them ... is essential to the correctness of the judgment, the judgment cannot stand.' (24 Cal.Jur. 965-967.)" The findings in the case at bar are certainly far from models of clarity. Although the court specifically found that the "sole and express purpose" of the corporate directors was to vest fee title in Harry Salih subject to the parking lot easement, the court concluded that Harry Salih was to have only the "privilege" of living on the land.

The lack of clarity in the trial court's findings is carried into the judgment, which the appellants contend limits Harry Salih to a "life estate." We agree the judgment can be so interpreted. Another of the trial court's findings specifically states that the parties orally agreed that Harry Salih's "privilege" of living on the property should terminate when Harry and Lee Salih ceased to own stock in respondent corporation. The findings indicating a life estate are unsupported by the evidence and also are in conflict with the allegations of respondent's complaint. Respondent there alleged that the real property had been conveyed to Harry Salih upon the understanding that he would hold it in trust for the corporation and would reconvey it to respondent upon demand. Respondent therefore prayed for a reconveyance. The trial court chose to order no reconveyance and made no finding to the effect that Harry Salih held the property in trust for respondent. To the contrary, it found that Harry Salih had a privilege to live on the land and further found that this privilege, like the easement in favor of respondent,

would terminate when Harry and Lee Salih ceased to own shares in respondent corporation. Such a finding is not supported by the evidence. The testimony of Mr. Skaff was that the corporate directors desired "that the house . . . should be given to Harry" or "to give Harry the exclusive right to live in that house." No mention whatever was made of this right's terminating at any specified time. Lee Salih also testified that the directors wished to "give the house to Harry." Respondent itself states that the purpose of the corporate resolution "was to give the appellants title to certain property . . . which was owned then by the corporation."

Code of Civil Procedure, section 956a, provides as follows: "In all cases where trial by jury is not a matter of right or where trial by jury has been waived, the Supreme Court or a district court of appeal may make findings of fact contrary to, or in addition to, those made by the trial court. Such findings may be based on the evidence adduced before the trial court either with or without the taking of evidence by the court of appellate jurisdiction . . ." In *Mirich* v. *Underwriters at Lloyd's London* (1944) 64 Cal.App.2d 522 [149 P.2d 19], plaintiff brought suit against an insurer to recover the unpaid amount of a judgment plaintiff had previously recovered against the insured. Defendant insurance company denied liability on the ground that the insured, a Dr. Balsinger, had obtained the policy by means of false statements in his application. The trial court entered judgment in favor of defendant insurer, but based this judgment on conflicting findings. The trial court found that Dr. Balsinger had previously been sued for malpractice and had failed to mention the prior suits in his insurance application. The trial court also found, however, that it was not true that the statement in the application respecting prior claims and suits was false and untrue. On appeal from the judgment, the appellate court stated, at pages 528-529: "Where a finding establishes the existence of a fact from which the plaintiff's right to recover follows as a matter of law, and another finding is to the effect that the fact does not exist, and there is substantial evidence in the record to support both findings, a reviewing court would be obliged to reverse a judgment in favor of either party. The trial court would have to make new findings. But that is not necessarily true where one finding is supported by the evidence and the other is not. The case before us is unique; the facts upon the fraud issue have been found both ways, and upon one set of findings the case has been decided each way.

. . . The uncontradicted evidence admits only of findings in favor of defendant. Under these circumstances we should not reverse the judgment because of the conflicts in the findings. The entire evidence is before us and the case is one where we should make findings in accordance with the facts established by the uncontradicted evidence and set aside the findings of the trial court which are in conflict with those made by us.'' The court accordingly struck the trial court's finding that Dr. Balsinger had not intentionally falsified his insurance application, and found as a fact that defendant insurance company issued its policy in reliance on Dr. Balsinger's statement that he had never been sued. The judgment for defendant was thus affirmed.

We have before us a similar situation. The finding that the sole and express purpose of the corporate directors was to vest fee title in Harry Salih, subject to the parking lot easement, clearly conflicts with the court's findings that Harry Salih was to have only a ''privilege'' of living on the land which was to terminate when Harry and Lee Salih ceased to own stock in respondent corporation. The evidence in this case supports the former finding and we find no evidence to support the latter finding. Accordingly, the cause is remanded to the trial court to amend its findings of fact and conclusions of law in accordance with the views herein expressed, and to enter a judgment vesting title to the property in question in Harry Salih, in fee, reserving an easement to respondent to use the parking area of said property so long as either Harry Salih or Lee Salih own a substantial interest in the Center Theatre by reason of ownership of stock in respondent corporation. Each party to bear his own costs.

Kaufman, P. J., and Agee, J., concurred.