[Civ. No. 25730. First Dist., Div. One. Mar. 24, 1970.]

MARY L. RAFEIRO, Plaintiff and Appellant, v.
AMERICAN EMPLOYERS' INSURANCE COMPANY,
Defendant and Respondent.

**COUNSEL**

Danaher, Fletcher, Gunn & Ware, Leonard Ware and Philip S. DeCaro for Plaintiff and Appellant.

Frederick Mahan for Defendant and Respondent.

**OPINION**

**SIMS, J.**—Plaintiff property owner has appealed from a summary judgment in favor of her contractor's insurer in an action entitled "Complaint for Indemnity" in which she sought to recover from the insurer the amount of a judgment together with costs and interest she had previously secured against the insured contractor. (See Ins. Code, § 11580.) The facts, with one exception hereinafter noted, are not disputed. Each party made a motion for a summary judgment. The resolution of the controversy turns upon the proper interpretation of the terms of the policy of comprehensive liability insurance issued to the contractor by the insurer, and the determination of whether the loss suffered by the plaintiff for which she recovered the prior judgment represents a liability of the contractor for which the insurer undertook to furnish indemnity. It is concluded, for the reasons set forth below, that the trial court properly resolved this controversy in favor of the defendant and that the judgment must be affirmed.

*The Record*

A pretrial conference was held after the insurer had filed its answer to plaintiff's complaint,[1] and the case was regularly set for trial. Twenty days before the day set for trial the plaintiff filed her notice of motion for summary judgment. No declaration was filed in support of this motion, but the plaintiff filed points and authorities in support of her position that once the prior judgment was admitted the insurer was liable.

The defendant insurer immediately countered with its notice of motion for summary judgment. It was supported by the declaration of the insurer's attorney which summarized, and requested the trial court to consider, certain depositions on file in the prior action which had been conducted in the same superior court. It was further supported by points and authorities to which were appended copies of the judgment, the court's memorandum decision, the findings of fact and conclusions of law, the pretrial

---

[1] A second cause of action on the prior judgment, against an individual as the *alter ego* of the insured corporation with whom the property owner contracted and against whom she recovered judgment, is not involved in these proceedings.

conference order, the plaintiff's trial brief, and the trial brief of the contractor, all as filed in the prior action, and a copy of the insurance policy. Subsequently the defendant filed the declaration of the president of the contracting corporation with relation to the nature of the damages involved in the prior action.

The plaintiff filed a declaration and further points and authorities, and after the defendant replied, the court rendered the judgment from which plaintiff has appealed.

No objection was made to the records of the prior action which were produced by the defendant. The trial court could, and this court may, properly take judicial notice of those proceedings. (See, Evid. Code, § 452, subd. (d), and § 453; and *Escobedo* v. *Travelers Ins. Co.* (1961) 197 Cal.App.2d 118, 121-122 [17 Cal.Rptr. 219].) Plaintiff's objections to the sufficiency of the declaration of the contractor's president, and the question of the sufficiency of her declaration to raise a question of fact are discussed below. From this record the following facts appear:

The pretrial order in the prior action states: "The contentions of the plaintiff are as follows: That on August 23, 1962, the plaintiff contracted with defendant Wentz Construction Company under which the defendant was obligated to build the plaintiff two separate apartment buildings consisting of approximately 40 units on her land in Palo Alto for the price of $355,000.00; that during the years 1963-1964 the plaintiff discovered there were certain conditions on the property which consisted of either a claim of unsuitable materials or unworkmanlike construction. . . ." Following a recital of specific complaints, the order states, "With regard to all the matters above, the plaintiff seeks damages for the cost of repairs and replacement and/or diminution in the market value of the two apartment buildings."

In her trial brief the plaintiff asserted, ". . . the heart of the case is essentially this: Are the materials and labor provided by the defendant corporation in conformity with recognized standards of workmanship and materials? If they prove on analysis to be in conformity, the plaintiff is not entitled to recover. If, on the other hand, the materials and workmanship as related to the specific items in dispute are not in conformity, the plaintiff is entitled to recover." After reviewing the defects in the electrical heaters, the roofs, the hot water heaters, and the flooring the brief continues as follows:

"5. *Diminution of Market Value.*

"Floyd Lowe, an experienced and qualified realtor as well as Inheritance Tax Appraiser, was called to establish the extent of property damage suf-

fered as a result of the conditions to which the previous discussion more particularly refer. On the basis of a hypothetical question which included all the defective conditions to which witnesses had already referred, Lowe testified that in his opinion the property suffered a diminution in market value equivalent in amount to at least twice the costs of repair or replacement."

Defendant took the position that the plaintiff could not recover for diminution in value because an award sufficient to correct the alleged defects would make her whole, and because the witness' testimony did not in fact establish any such damages.

The court's memorandum decision awarded specific sums for specific defects without any allowance for diminution in value, and directed the plaintiff to prepare findings and judgment. The findings recite: "2. That defendant negligently and carelessly selected, used and installed unsuitable materials and provided unworkmanlike services in the construction of said buildings; as a direct and proximate result thereof plaintiff suffered property damage to the apartment buildings in the following particulars: . . ." The particulars are set forth in the margin.[2] A paragraph numbered "3" and reading, "As a direct and proximate result of the negligent and careless construction of the two apartment buildings by defendant herein plaintiff suffered diminution in the market value of said buildings in the aggregate sum of $13,400.00" was stricken out by the judge, and the following paragraphs were renumbered. Further paragraphs "3" and "4" authorize recovery of the total sum, $13,400, on the respective theories of implied and express warranty. Judgment followed for that sum.

---

[2]"(a) The roofs on each of the apartment buildings leaked and caused discharge of water into the carports and other portions of the apartment buildings and as a direct and proximate result thereof plaintiff suffered property damage in the sum of $2,250.00

"(b) The electrical heaters installed in each of the apartment buildings failed and proved incapable of generating a sufficient quantity of heat; as a direct and proximate result thereof replacement of existing heaters and installation of new heaters including damages to existing walls and related areas will cause property damage in the sum of $6,400.00

"(c) Hot water heaters installed in the utility room of each of the apartment buildings were unable to satisfy the reasonable hot water demands of the tenants and as a direct and proximate result thereof each of the existing hot water heaters will need to be replaced and new heaters installed in the sum of $2,000.00.

"(d) The flooring in the second level of the split level apartments was negligently and carelessly constructed and installed and as a direct and proximate result thereof plaintiff suffered property damage thereto in the sum of $2,000.00.

"(e) The windows in the second level of the split level apartments were negligently and carelessly constructed and installed and as a direct and proximate result thereof plaintiff suffered property damage thereto in the sum of $750.00."

*Summary Judgment*

"Numerous decisions have discussed the law of summary judgments, and the rules relating thereto are well settled. The matter to be determined by the trial court in considering such a motion is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts. [Citation.] Thus, the trial court was justified in granting the motion here only if the declarations filed in support of it, strictly construed, contain facts sufficient to entitle the defendants to judgment, and those of the plaintiffs, liberally construed, show that there was no issue of fact to be tried." (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)

Plaintiff insists that within the foregoing principles it was error to deny her a summary judgment on the basis of her declaration in which she stated, "That as a direct result of the defects in the construction of the Newell Apartments, as more particularly described in the Judgment rendered by the Superior Court of the State of California for the County of Santa Clara in Action No. P 8547, the Newell Apartments suffered a diminution of market value in an amount equal to, if not more than, but certainly not less than, the proved reasonable cost of repairs as evidenced by the prior Judgment."

She points out that as an owner of real property she was competent to testify concerning the value of her property. (See *Holmes* v. *Southern Cal. Edison Co.* (1947) 78 Cal.App.2d 43, 53 [177 P.2d 32]; *Watterson* v. *Knapp* (1939) 35 Cal.App.2d 283, 289 [95 P.2d 154]; and Witkin, Cal. Evidence (2d ed. 1966) § 403, p. 361.)[3] Statements of contrary purport in the declaration of the contractor's president which was filed in this action,

---

[3]It is unnecessary in this proceeding to consider whether the codification of the above rule into special rules of evidence applicable only to eminent domain and in-

were not effective to controvert plaintiff's declaration because he did not allege that he could so testify (see *House* v. *Lala* (1960) 180 Cal.App.2d 412, 416 [4 Cal.Rptr. 366]), nor does his declaraton set forth his qualifications to appraise the respective market value of the apartments with and without the defects. (See *Sooy* v. *Kunde* (1947) 80 Cal.App.2d 347, 355 [181 P.2d 758]; Witkin, *op.cit.*, § 423, p. 381.)

■ Plaintiff's approach misses the mark. The issue in this case is not whether the apartments in fact suffered any diminution in value within the principles discussed below, but whether the judgment, upon which plaintiff seeks to recover, represents damages of a type for which the insurer agreed to indemnify the contractor. The plaintiff is in court as a beneficiary of the contract between the contractor and the insurer, and must bring her claim—the judgment—within the terms of that contract. (See Ins. Code, § 11580; *Escobedo* v. *Travelers Ins. Co., supra,* 197 Cal.App.2d 118, 127; and *Johnson* v. *Holmes Tuttle Lincoln-Mercury, Inc.* (1958) 160 Cal.App.2d 290, 297-300 [325 P.2d 193].) Her subsequent unadjudicated claims concerning the nature of her damages cannot affect the record made in the prior suit. The trial court properly rejected any conclusion based on her declaration.

There remains for consideration the legal question posed by the scope of the risks covered by the contractor's insurance, the risks excluded by the terms of the policy, and the nature of the damages awarded by the judgment.[4]

*Scope of the Coverage*

■ Under the terms of the policy in force with the contractor during the years 1963-1964, the insurer undertook in "Coverage D . . . To pay on behalf of the insured all sums which the insured shall become legally

verse condemnation proceedings has qualified its general application. (See Evid. Code, §§ 810 and 813, subd. (a)(2); and *City of Pleasant Hill* v. *First Baptist Church* (1969) 1 Cal.App.3d 384, 411 [82 Cal.Rptr. 1].)

[4]Since there is ample precedent covering comparable policy provisions there is no necessity for, as urged by plaintiff, resorting to canons of construction such as "any ambiguity or uncertainty in an insurance policy is to be resolved against the insured." (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 437 [296 P.2d 801, 57 A.L.R.2d 914]. See also *Gray* v. *Zurich Ins. Co.* (1966) 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168]; *Steven* v. *Fidelity & Cas. Co.* (1962) 58 Cal.2d 862, 871 [27 Cal.Rptr. 172, 377 P.2d 284]; and *Blackfield* v. *Underwriters at Lloyd's London* (1966) 245 Cal.App.2d 271, 276 [53 Cal.Rptr. 838]; *Maxon* v. *Security Ins. Co.* (1963) 214 Cal.App.2d 603, 611 [29 Cal.Rptr. 586]; but cf. *Continental Cas. Co.* v. *Phoenix Constr. Co., supra,* 46 Cal.2d at p. 432; *O'Doan* v. *Insurance Co. of North America* (1966) 243 Cal.App.2d 71, 77 [52 Cal.Rptr. 184]; *Johnson* v. *Aetna Life Ins. Co.* (1963) 221 Cal.App.2d 247, 258 [34 Cal.Rptr. 484]; *Protex-A-Kar Co.* v. *Hartford Acc. & Indem. Co.* (1951) 102 Cal.App.2d 408, 412-413 [227 P.2d 509]; and *Matsuo Yoshida* v. *Liberty Mut. Ins. Co.* (9th Cir. 1957) 240 F.2d 824,

obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, *caused by accident.*" (Italics added.) By endorsement, effective August 5, 1963, (1) the words "resulting from an 'occurrence' " were substituted for the emphasized phrase; (2) the word "occurrence" was substituted for the word "accident" whenever the latter appeared in the policy; (3) the word "occurrence" was defined as follows: " 'Occurrence' means an event, or continuous or repeated exposure to conditions, which unexpectedly causes injury during the policy period. All damages arising out of such exposure to substantially the same general conditions shall be considered as arising out of one occurrence" and (4) it further was expressly provided, "The amendment of coverage in paragraph 1 above shall not apply (A) To injury to property other than physical injury to or physical destruction of real or tangible property; (B) To injury to property caused intentionally by or at the direction of the insured, or allowed to exist by the insured after evidence that injury may result therefrom; (C) With respect to any claim or suit alleging that construction or repair does not comply with customers' specifications."

Plaintiff, disregarding the last clause of the endorsement, equates "occurrence" with "accident." She asserts that the damages occasioned by the leaky roof, the defective heaters, the inadequate hot water heaters, and the negligent construction of the flooring and the windows (see fn. 2 above) were caused by accident. Defendant relies on numerous precedents[5] which indicate that accident should refer to the cause, not the effect, and that the natural result of supplying defective or inadequate materials or unworkmanlike construction is not an accident.

In *Geddes & Smith, Inc.* v. *St. Paul Mercury Indem. Co.* (1959) 51

---

826-827.) Plaintiff's reliance on the doctrine of the adhesion contract (see *Gray* v. *Zurich Ins. Co., supra,* 65 Cal.2d 263, 269-271; and *Steven* v. *Fidelity & Cas. Co., supra,* 58 Cal.2d 862, 878-884) is of questionable pertinency because plaintiff was not a party to the contract which must be interpreted.

[5]Defendant cites (with some discrepancies as to volume and page) numerous authorities which appear to support the proposition that a loss which is the natural and probable consequence of a negligent act is not "caused by accident" within the meaning of such a liability policy. (See *City of Aurora, Colorado* v. *Trinity Universal Ins. Co.* (10th Cir. 1964) 326 F.2d 905, 906; *Albuquerque Gravel Products Co.* v. *American Employers Ins. Co.* (10th Cir. 1960) 282 F.2d 218, 220-221; *Hutchinson Water Co.* v. *United States Fid. & Guar. Co.* (10th Cir. 1957) 250 F.2d 892, 893; *Thomason* v. *United States Fid. & Guar. Co.* (5th Cir. 1957) 248 F.2d 417, 419; *Kuckenberg* v. *Hartford Acc. & Indem. Co.* (9th Cir. 1955) 226 F.2d 225, 226-227; *Midland Constr. Co.* v. *United States Cas. Co.* (10th Cir. 1954) 214 F.2d 665, 666-667; *Neale Constr. Co.* v. *United States Fid. & Guar. Co.* (10th Cir. 1952) 199 F.2d 591, 592-593; *C. Y. Thomason Co.* v. *Lumbermens Mut. Cas. Co.* (4th Cir. 1950) 183 F.2d 729, 732-733; *M. Schnoll & Son, Inc.* v. *Standard Acc. Ins. Co.* (1959) 190 Pa.Super. 360, 362-365 [154 A.2d 431, 432-433]; but cf. *Rex Roofing Co.* v. *Lumber Mut. Cas. Ins. Co.* (1952) 280 App.Div. 665, 667-668 [116 N.Y.S.2d 876, 878].)

Cal.2d 558 [334 P.2d 881], a contractor had recovered $100,000 damages from his supplier for expenses incurred in removing, installing, repairing, storing, and shipping defective doors, for expenses incurred in office overhead during the time it was engaged in settling disputes arising out of installation of the doors, and for loss of profit. He then brought suit against the supplier's insurer. The policy provisions for coverage were substantially similar to those in the policy involved in this case. (See 51 Cal.2d at p. 562; and *Geddes & Smith, Inc.* v. *St. Paul Mercury Indem. Co.* (1965) 63 Cal.2d 602, 604, fn. 1 [47 Cal.Rptr. 564, 407 P.2d 868].) The court, in answer to the defendant's contention that there was no injury to or destruction of property caused by accident, stated: "No all-inclusive definition of the word 'accident' can be given. It has been defined 'as "a casualty—something out of the usual course of events and which happens suddenly and unexpectedly and without design of the person injured." (*Rock* v. *Travelers Ins. Co.*, 172 Cal. 462, 465 . . .; *Richards* v. *Travelers Ins. Co.*, 89 Cal. 170, 175 . . .)' (*Zuckerman* v. *Underwriters at Lloyd's*, 42 Cal.2d 460, 473 . . .) It ' "includes *any event which takes place without the foresight or expectation of the person acted upon or affected by the event."* ' (*Richards* v. *Travelers Ins. Co.*, 89 Cal. 170, 176 . . .; see also *Ritchie* v. *Anchor Casualty Co.*, 135 Cal.App.2d 245, 252-253 . . .; *Moore* v. *Fidelity & Cas. Co.*, 140 Cal.App.2d Supp. 967, 971 . . .)

" 'Accident, as a source and cause of damage to property, within the terms of an accident policy, is an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause.' (*Hauenstein* v. *Saint Paul-Mercury Indem. Co.*, 242 Minn. 354 . . .)" (*Id.*, at pp. 563-564. See also *Gogerty* v. *General Acc. Fire & Life Assur. Corp.* (1965) 238 Cal.App.2d 574, 577-578 [48 Cal.Rptr. 37]; *Meyer* v. *Pacific Employers Ins. Co.* (1965) 233 Cal.App.2d 321, 325 [43 Cal.Rptr. 542]; and *Maxon* v. *Security Ins. Co., supra,* 214 Cal.App.2d 603, 611-612.)

In the *Geddes & Smith, Inc.* case it was conceded that by virtue of an exclusion in the policy damages arising by reason of injury to or the destruction of the doors themselves was not covered, but only the damage to other property by reason of the failure of the doors (*id.* at pp. 564-565 and 566), and it was this latter damage that was found to be caused by accident. If, in this case, there was no such damage established in the prior suit by plaintiff against the insurer's insured, and the damage established was excluded, it is unnecessary to pursue further the question of whether and to what extent the damages awarded in the prior suit were "caused by accident," or may be considered as "resulting from an occurrence." (Cf. fn. 5 above.)

*Scope of the Exclusions*

The original policy provided under "Exclusions," "This policy does not apply: . . . '(j) under coverage D, to injury to or destruction of . . . (4) any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises; . . ."

At the same time as the endorsement was added which has been set forth above, a second endorsement was added replacing paragraph "(j)". It provided that the policy would not apply to "2. . . . to injury to or destruction of . . . (iv) that particular part of any property, not on premises owned by or rented to the insured, . . . (c) the restoration, repair, or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured, . . . 3. to injury or destruction of any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises."

It appears from the above provisions that the insurance furnished, unlike malpractice insurance, was not intended to indemnify the contractor (and through him the owner) for direct damages resulting because the contractor furnished defective materials or workmanship. (Cf. contractor's bond as contemplated by Code Civ. Proc., § 1185.1, subds. (c) and (d); and Civ. Code, §§ 3235 and 3236, as effective January 1, 1971; Stats. 1969, ch. 1362, § 2, pp. 2776-2777, § 3, and § 11, p. 2783.) In *Geddes & Smith, Inc., supra,* the court recognized the exclusion for "injury to or destruction of . . . any goods or products . . . sold . . . by the Insured . . . out of which the accident arises." (See 51 Cal.2d at p. 558, and *Geddes & Smith, Inc.,* v. *St. Paul Mercury Indem. Co., supra,* 63 Cal.2d 602, 604, fn. 2.) In the cases last cited the court held that the supplier and, as well, his insurer, would be liable for the damages caused to other property by the defects in the product. In both cases the court approved *Hauenstein* v. *St. Paul-Mercury Indem. Co.* (1954) 242 Minn. 354 [65 N.W.2d 122], in which the court said, in imposing liability upon the insurer of a supplier who furnished defective plaster, "No one can reasonably contend that the application of a useless plaster, which has to be removed before the walls can be properly replastered, does not lower the market value of a building. Although the injury to the walls and ceilings can be rectified by removal of the defective plaster, nevertheless, the presence of the defective plaster on the walls and ceilings reduced the value of the building and constituted property damage. The measure of damages is the diminution in the market value of the building, or the cost

of removing the defective plaster and restoring the building to its former condition plus any loss from deprival of use, whichever is the lesser." (242 Minn. at p. 358 [65 N.W.2d at p. 125].) So in the second *Geddes* case the court sustained a judgment predicated solely upon proof of the cost of removing the defective products and restoring the buildings to their former condition, because it would have been impractical and unjustifiably burdensome to prove the diminution in value of some 76 homes. (65 Cal.2d at pp. 604-606.)

Plaintiff's reliance in these authorities for the proposition that she is entitled to similar considerations in this case overlooks the fact that here the contractor is the supplier, and the insurer has not undertaken to insure injury or destruction of the roof, heaters, hot water heaters, flooring or windows furnished by the contractor as its insured, or to indemnify the contractor "with respect to any claim or suit alleging that construction or repair does not comply with customers specifications."

In *Blackfield* v. *Underwriters at Lloyd's, London* (1966) 245 Cal.App.2d 271 [53 Cal.Rptr. 838], and *Eichler Homes, Inc.* v. *Underwriters at Lloyd's, London* (1965) 238 Cal.App.2d 532 [47 Cal.Rptr. 843], the dispute arose in each case between the builder and his insurer with respect to the insurer's obligation to defend an action brought by a home purchaser for damages for defects in his home. In each case the court noted that the insurer's obligation to defend was measured by the terms of the policy and the pleading of the claimant who sued the insured. In determining whether the claimant's complaint would support a recovery upon a risk covered by the insurer's policy, each opinion noted that although the policy involved excluded liability for any defective product or work itself, the claims were for damages that were separate and distinct from any claim based upon the cost of repair or replacement of the defective portion of the work itself, and so were clearly within the coverage of the insurer's policy. (See 245 Cal.App.2d at p. 275 and 238 Cal.App.2d at p. 539. Cf. *Karpe* v. *Great American Indem. Co.* (1961) 190 Cal.App.2d 226, 234 [11 Cal.Rptr. 908].)

It is unnecessary to determine to what extent, if any, the exclusions in this case may be broader than those in the *Lloyd's* policy. The fact remains that with the record of the prior action before it, the trial court in this case, in giving judgment for the defendant, concluded that the damages awarded in the prior suit were for repair and replacement of defective materials and workmanship, and that nothing was awarded for diminution in value of the remainder of the property or for damages to real property, improvements, appliances and furnishings other than those portions of articles alleged to have been defective. No facts were produced by plaintiff, who

has the burden of proof, which would sustain a contrary conclusion. The refusal of the court to find that that plaintiff suffered diminution in the market value of her building, may not be the equivalent of a finding that she did not suffer such diminuation. Nevertheless, in the absence of an appeal or other modification of the findings in the earlier action (cf. *Hemmerling* v. *Tomley, Inc.* (1967) 67 Cal.2d 572, 576 [63 Cal.Rptr. 1, 432 P.2d 697]; *Centerville Amusement Co.* v. *Salih* (1962) 199 Cal.App.2d 106, 112 [18 Cal.Rptr. 671]; and *Andrews* v. *Cunningham* (1951) 105 Cal.App.2d 525, 529 [233 P.2d 563]) there is nothing in the record to support plaintiff's present contentions.

The case is governed by *Volf* v. *Ocean Acc. & Guar. Corp.* (1958) 50 Cal.2d 373 [325 P.2d 987], and *Liberty Bldg. Co.* v. *Royal Indem. Co.* (1960) 177 Cal.App.2d 583 [2 Cal.Rptr. 329]. (See also *Kendall Plumbing, Inc.* v. *St. Paul Mercury Ins. Co.* (1962) 189 Kans. 528, 530-532 [370 P.2d 396, 397-399]; and Macaulay, *Justice Traynor and the Law of Contracts* (1961) 13 Stan.L.Rev. 812, 824-827.) In each of those cases there was no showing of damage aside from that to the defective property or work which was expressly excluded in the insurance policy. (See 50 Cal.2d at pp. 375-376; 177 Cal.App.2d at pp. 587-588; and *Karpe* v. *Great American Indem. Co., supra,* 190 Cal.App.2d 226, 234.)

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.