[Civ. No. 29641.    Second Dist., Div. Three.    May 17, 1967.]

FRANK KURLAND, Plaintiff and Appellant, v. UNITED PACIFIC INSURANCE COMPANY, Defendant and Respondent.

S. L. Kurland and A. Arnold Klein for Plaintiff and Appellant.

Betts & Loomis and Ingall W. Bull, Jr., for Defendant and Respondent.

FORD, P. J.—The plaintiff, the assignee of the owners and of the general contractor, has appealed from a judgment in favor of the defendant in an action upon a performance bond executed with respect to a subcontract for the installation of an air conditioning system in an apartment building in Las Vegas, Nevada.

The findings of fact of the trial court were in part as follows: 1. On August 1, 1957, defendant United Pacific Insurance Company executed a subcontract bond in which M.F.S., Inc., the subcontractor, was named as principal and Labby Construction and Development Company (hereinafter called Labby), the general contractor, was named as obligee. (The terms of the bond were made a part of the findings of fact.[1]) 2. The subcontract of May 21, 1957, related to the air conditioning work to be performed in a cooperative apartment building known as the Rexford, Inc., which was being constructed by Labby, as general contractor, for the owners, S. L. Kurland and Paul Manuel. (The terms of the subcontract were made a part of the findings of fact.[2]) 3. The plans and specifications were prepared for the owners by an architect

[1]The bond was in part as follows (the typewritten part, as distinguished from the printed part, being herein designated by italics): "AND WHEREAS, said Principal on the *21st* day of *May*, 1957, entered into a written sub-contract with said Obligee for *install* [*sic*] *air-conditioning system as per attached proposal. System is to establish at least a 30 degree variation from outside temperature for cooling and a fifty degree variation from outside temperature for heating*, which sub-contract is hereby referred to and made a part hereof by reference.

"Now, THEREFORE, if the above bounden Principal shall well and truly perform the work contracted to be done under said sub-contract between said Principal and said Obligee . . . then this obligation shall be null and void; otherwise it shall remain in full force and effect."

[2]A portion of the subcontract (the typewritten part inserted in the printed form being indicated by italics) was:

"1. The Subcontractor agrees hereby to furnish all labor, materials and equipment and to perform all work required to:

*Install air-conditioning system as per attached proposal. System is to establish at least a 30 degree variation from outside temperature for cooling and a fifty degree variation from outside temperature for heating.*

in accordance with all conditions of the contract between the Owner and the Contractor and the plans and specifications for the said work of improvement, all of the foregoing being made a part hereof as though fully set forth herein."

licensed in the State of Nevada; the air conditioning system embodied in the plans and specifications was designed for the architect by an air conditioning engineer licensed in that state. 4. The proposal submitted to Labby by M.F.S., Inc. was prepared upon the basis of the air conditioning plans and specifications. 5. The equipment specified in the plans and specifications, or the substantial equivalent thereof, and all of the duct work, piping, wiring and other equipment necessary to furnish and complete the air conditioning system described in the plans and specifications were installed in a workmanlike manner in the places indicated therein. 6. The air conditioning system ''was incorrectly and inadequately designed for the purpose for which it was intended, that is, the adequate cooling of said 22 unit apartment. house.'' 7. M.F.S., Inc. ''reasonably and in good faith believed and relied upon the plans and specifications . . . as representing a system which would be adequate to cool said apartment building by thirty degrees in extreme summer conditions;'' M.S.F., Inc. was never asked to redesign the system. 8. The damages incurred by plaintiff's assignors in endeavoring to remedy the problems which arose in connection with the air conditioning system were not the proximate result of any act or failure to act on the part of M.F.S., Inc. 9. ''That by reason of the facts hereinabove set forth, it was physically impossible to furnish or produce an air conditioning system sufficient to cool said apartment building by thirty degrees in extreme summer conditions by following or complying with said plans and specifications.''

█ The function of this court with respect to the interpretation of a written contract is set forth in *Parsons* v. *Bristol Development Co.*, 62 Cal.2d 861, at page 865 [44 Cal.Rptr. 767, 402 P.2d 839] : ''The interpretation of a written instrument, even though it involves what might properly be called questions of fact (see Thayer, Preliminary Treatise on Evidence, pp. 202-204), is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect. (See Civ. Code, §§ 1635-1661; Code Civ. Proc., §§ 1856-1866.) █ Extrinsic evidence is 'admissible to interpret the instrument, but not to give it a meaning to which it is not reasonably susceptible' [citations], and it is the instrument itself that must be given effect. (Civ. Code, §§ 1638, 1639; Code Civ. Proc., § 1856.) █ It is therefore solely a judicial function to interpret a written instrument unless the in-

terpretation turns upon the credibility of extrinsic evidence. Accordingly, 'An appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence [citations], where there is no conflict in the evidence [citations], or a determination has been made upon incompetent evidence [citation].' (*Estate of Platt*, 21 Cal.2d 343, 352 [131 P.2d 825] . . . .''

Evidence extrinsic to the subcontract and the bond was properly admitted at the trial to determine the circumstances under which the parties contracted and their purpose. (*Parsons* v. *Bristol Development Co., supra,* 62 Cal.2d 861, 864-865.) In the present case the uncontradicted evidence was that the plans and specifications, including those relating to the air conditioning work, were prepared for the owners by an architect licensed by the State of Nevada. The subcontractor relied thereon in submitting his proposal or bid. The first bond submitted by the subcontractor for the air conditioning work was rejected by the general contractor because it did not contain the following language (which is contained in the second bond, upon which the present action was brought) : ''System is to establish at least a 30 degree variation from outside temperature for cooling and a fifty degree variation from outside temperature for heating. . . .''

The primary question to be resolved on this appeal is whether the language quoted in the preceding paragraph of this opinion, as embodied in the subcontract and in the bond, constituted a warranty or guaranty on the part of the subcontractor that the air conditioning system which the subcontractor undertook to install would in fact ''establish at least a 30 degree variation from outside temperature for cooling.'' As has been noted, the trial court found that the proposal submitted to the general contractor by the subcontractor was prepared upon the basis of the plans and specifications drawn by the owners' architect; the equipment specified in those plans and specifications, or the substantial equivalent thereof, was installed and all of the work necessary to furnish and complete the air conditioning system described in those plans and specifications was done by the subcontractor in a workmanlike manner; but, although the subcontractor reasonably and in good faith relied upon the adequacy of the plans and specifications as a representation of a system which would cool the apartment building by thirty degrees under summer conditions, the air conditioning system ''was incorrectly and in-

adequately designed for the purpose for which it was intended, that is, the adequate cooling of said 22 unit apartment house." Those findings of fact have substantial support in the record.

In accordance with the reasoning of *Parsons* v. *Bristol Development Co., supra,* 62 Cal.2d 861, we have made our independent determination of the meaning of the subcontract and the bond. Our conclusion is that the subcontractor did not warrant or guarantee that the system embodied in the architect's plans and specifications would produce the desired variation from outside temperature for the cooling of the apartment building.

Since the plans and specifications were prepared by the owners' architect and not by the subcontractor, and since the subcontractor undertook to do the work in accordance with his specific proposal, we cannot reasonably conclude that the subcontractor assumed responsibility for the adequacy of the plans and specifications to meet the purpose of achieving "a 30 degree variation from outside temperature for cooling." The language upon which the plaintiff relies constituted a statement of the purpose sought to be achieved by means of the owners' plans and specifications rather than an undertaking on the part of the subcontractor of responsibility for the adequacy of such plans and specifications as the design of a system capable of producing the desired result. (See *Corporation of Presiding Bishop* v. *Cavanaugh,* 217 Cal.App.2d 492, 506-507 [32 Cal.Rptr. 144].)

A problem of a kindred nature was presented in *Bush* v. *Jones* (3d Cir 1906) 144 F. 942 [75 C.C.A. 582, 6 L.R.A. N.S. 774] (noted in 6 A.L.R.3d at pages 1402-1403). Therein, after completion of work, a cellar leaked badly. The specifications had provided: "The whole to be made perfectly water-tight and guaranteed." In holding that the contractors were not liable the court reasoned as follows (144 F., at page 943): "It is claimed that the contractors by virtue of the last provision were bound at all hazards to make a water-tight job; that being, in terms, what they had not only undertaken but guarantied to do. But to this we cannot accede. The guaranty was not absolute, but qualified. It extended to their own work only, and only so far as this was involved, to the result. The specifications, which were the work of the architect, and for which they could not be expected to assume responsibility, directed how the work should be done, and by this they were

controlled. So far as this was calculated to make a water-tight cellar, they unquestionably guarantied that it would be such. But that is all. It was not as though they were left to their own judgment; that which they were to do, as appears above, being specified in detail. . . . The owner having assumed to say by the specifications what was to be done, the contractors were relieved so far as they complied therewith. They guarantied, not the sufficiency of this to produce the desired result, but merely the effectiveness of what they themselves did under it.'' (Similar reasoning is found in *Gilbo & Swartz* v. *Merrill's Estate,* 93 Vt. 380 [104 A. 10, L.R.A. 1918F 387], a case involving a contract to install a water system on a farm.)

In his closing brief the plaintiff makes reference to a paragraph of the air conditioning specifications which is in part as follows: ''GUARANTEE: . . . and Contractor shall guarantee that the equipment installed shall satisfactorily cool and heat this building in accordance with standard design temperatures;[3] if equipment installed does not do the job satisfactorily, Contractor shall remidy [*sic*] same.'' It is true that the subcontract provides that the subcontractor is to perform ''in accordance with all conditions of the contract between the Owner and the Contractor and the plans and specifications for the said work of improvement, all of the foregoing being made a part hereof as though fully set forth herein.'' But, assuming that such ''guarantee'' constituted part of the agreement of the subcontractor, it must be kept in mind that, basically, his undertaking was to do the air conditioning work in accordance with the plans and specifications which he did not prepare. As stated in *Patrick J. Ruane, Inc.* v. *Parker,* 185 Cal.App.2d 488, at page 498 [8 Cal.Rptr. 379]: '' 'A contract must receive such an interpretation as will make it . . . reasonable. . . .' (Civ. Code, § 1643.) 'Particular clauses of a contract are subordinate to its general intent.' (Civ. Code, § 1650.) 'Stipulations which are necessary to make a contract reasonable . . . are implied. . . .' (Civ. Code, § 1655.) ''

In the light of the reasoning which has been heretofore set forth in this opinion, we construe the ''guarantee'' as being an undertaking on the part of the subcontractor not

---

[3]There was testimony that in Las Vegas in 1957 the standard design temperature differential in the summertime was 30 degrees, being the difference in temperature between the outside of a building and the inside thereof resulting from the operation of an air conditioning system.

that the system as designed was adequate to produce the results desired by the owners but that the subcontractor's work pursuant to the plans and specifications would be done as effectively as possible to achieve those desired results. Because of the defects in the design to which the subcontractor had to adhere, that goal could not be reached. It would not be reasonable to construe the language of ''guarantee'' as being sufficiently broad to constitute a basis for a transfer to the subcontractor of responsibility for defective plans and specifications procured by the owners. (Cf. *Goldman* v. *Ecco-Phoenix Elec. Corp.*, 62 Cal.2d 40, 46-48 [41 Cal.Rptr. 73, 396 P.2d 377].)

The judgment is affirmed.

Cobey, J., and Moss, J., concurred.

A petition for a rehearing was denied June 13, 1967, and appellant's petition for a hearing by the Supreme Court was denied July 12, 1967.