[Civ. No. 12177. Third Dist. Nov. 28, 1969.]

SUNBEAM CONSTRUCTION CO., Plaintiff and Appellant, v. FRANK FISCI et al., Defendants and Respondents.

[Civ. No. 12280. Third Dist. Nov. 28, 1969.]

SUNBEAM CONSTRUCTION CO., Plaintiff and Appellant, v. DAVE W. DAILEY et al., Defendants and Respondents.

(Two cases.)

## COUNSEL

Price, Burness & Price and R. E. Burness for Plaintiff and Appellant.

Rich, Fuidge, Dawson, Marsh & Morris, Richard H. Fuidge, Laughlin, Craig & Christensen and Maynard C. Craig for Defendants and Respondents.

## OPINION

**BRAY, J.***—The appeals in these two cases from summary judgments in favor of the respective defendants were consolidated for hearing.

*Questions Presented:*

1. Does a contractor's compliance with plans and specifications furnished by the owner preclude any implied warranty which would have required a deviation from such plans and specifications?

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

2.  Was there an absence of notice of the claimed breach of warranty?

*Record*:

The complaint in the action (3 Civil No. 12177) against Fisci Bros. and Frank Fisci alleged that plaintiff and Fisci Bros. and Frank Fisci entered into a contract in writing whereby the latter agreed to provide the framing and carpentry for the erection of a certain apartment building for plaintiff in a good and workmanlike manner; that the latter were to install and frame the supporting timbers and covering for the roof of the apartments; that they were specialists in this work and that plaintiff relied upon them to perform the work; that they did complete the framing and carpentry on the roof and *impliedly warranted* to plaintiff that the roof was fit to protect the apartments below against rain and other elements. Plaintiff relied upon said warranty; however, the roof was not fit for the purpose for which it was impliedly warranted in that Fisci Bros. *did not provide a crown or slope thereto* and as a proximate result water collected thereon, causing the roof to break down and extensive damages to the apartments, to plaintiff's damage in the sum of $8,950.

In the action (3 Civil No. 12280) against defendants Dave W. Dailey and Chester Dailey, Jr., doing business as the Four Counties Roofing Company, plaintiff's complaint is similarly based upon an alleged implied warranty and alleged that defendants entered into a contract in writing to roof the apartment building for plaintiff in a good and workmanlike manner; that defendants were specialists in this work and that plaintiff relied upon them to perform the work; that they completed the roofing and *impliedly warranted* to plaintiff that the roof was fit to protect the apartments below against rain and the elements. As in the Fisci complaint, the complaint alleged that the roof was not fit for that purpose in that defendants *did not provide a crown or slope thereto,* and as a proximate result water collected thereon, causing the roof to break, causing damage to the apartments to plaintiff's damage in the sum of $8,950.

In both cases the defendants admitted the existence of the contracts for constructing the roof and that they were roofing specialists, denied the implied warranties and alleged the completion of the work in a good and workmanlike manner.

Defendants in each case filed a motion for summary judgment. These motions were heard on depositions and affidavits. It is unnecessary to detail the facts stated in the depositions and affidavits as they showed, without contradiction, that the work was done in a good and workmanlike manner and in exact accordance with the plans and specifications submitted by plaintiff in each case, which called for a flat roof and did not call for a pitch

or slope or crown, and that the cause of the damage was due to the flat roof without pitch, crown or slope.

Plaintiff concedes that the roof was constructed in a good and workmanlike manner and in exact conformance to the plans and specifications furnished by it, which did not call for a pitch, slope or crown. Its sole contention is that a contractor is liable under an implied warranty for leaking of a roof covering where drainage of water is not provided by it, even though the contractor complies with the plans and specifications furnished which do not provide for drainage.

The trial court pointed out that in the affidavit of Mr. Fisci he stated "that where the plans call for a flat roof the contractor should not put a pitch in it in the absence of an arrow indicating the way the water was to flow," and that there was no indicating arrow on the plans and the contractor is not entitled to deviate therefrom, and if the plans show no pitch in a roof, the roof is built without pitch. The court then said that this statement was not controverted in any way and that in its opinion "the only implied warranty that would arise is that the roof framing would conform to the design specified," which it was conceded it did. The court then granted judgment in each case for the defendants.

The work of Fisci Bros. was that of installing the woodwork construction of the building and the roof members only. They did not install the actual roofing material nor the sheet metal work in the downspouts.

The work by the Daileys was that of laying specified roofing material on the roof frame constructed by Fisci Bros. No carpentry work was done or to be done by the Daileys. Chester Dailey, Jr., testified that Four Counties laid the roofing materials on top of the frame exactly as called for in the contract and that they had no authority to deviate from the plans and specifications.

■ "Summary judgment is proper only if the affidavits in support of the moving party are sufficient to sustain a judgment in his favor and his opponent does not by affidavit show facts sufficient to present a triable issue." (*R. D. Reeder Lathing Co.* v. *Allen* (1967) 66 Cal.2d 373, 376-377 [57 Cal.Rptr. 841, 425 P.2d 785].) Thus, the question in these cases is, Was there a triable issue in these cases? No triable issue was presented as to the fact that the plans and specifications for the construction of the roof showed no pitch, slope or crown, and that the cause of the damage was that the roof lacked such. Nor is there any triable issue as to the custom testified to by Fisci and Dailey that the contractor is not entitled to deviate from the plans and specifications. ■ ■ And as will be shown hereinafter, the authorities hold that where the plans and specifications were prepared by the owner's architect and not by the subcontractor, and since the subcon-

tractor undertook to do the work in accordance with the specific proposal, it cannot reasonably be concluded that the subcontractor assumed responsibility for the adequacy of the plans and specifications to meet the purpose of the owner, and where the contractor faithfully performs the work as specified, there cannot be an implied warranty that the contractor will supplement the inadequacy of the plans.

Endeavoring to show that defendants knew or should have known that the plans were defective (an issue not raised by the complaint), plaintiff, after finding out that the Daileys had done work in constructing framework for roofs (although they had nothing to do with constructing plaintiff's work) raised many general questions about that type of work. Plaintiff contends that certain statements of Chester Dailey, Jr., in his deposition would indicate a duty on the part of a contractor to depart from the plans and specifications if he observes that they may be defective. The statements were in answer to hypothetical questions and without regard to the plans and specifications in the instant case. Thus, he was asked that if he were putting trusses in to support a flat roof and he knew there were drains on the side, would he place a pitch in the roof? He answered, "If I placed drains around there, I'd build a pitch in there." Neither Fisci nor the Daileys placed or were supposed to place drains in the building in question. He stated that the term "flat roof" did not necessarily mean a completely flat roof. However, he stated that the plans and specifications for plaintiff's roof did call for such a roof. He was asked if he were going to build a flat roof and it had drains along the side, would he deduce that the roof should have a pitch and he said he would. Again, however, he stated that there was nothing in the plaintiff's plans, including the detail of a drain, which would show a contractor that the design was wrong. The plans did not show location of downspouts, they merely showed one downspout, a "typical eave detail . . . a dotted outline of where the roof outlet is, not in location, but just how it is placed up next to the eave."

We are dealing with the question of whether any triable issues of fact were shown on the hearing of the motions for summary judgments. There was no evidence to contradict the statements of Fisci and Dailey that under custom a contractor may not deviate from the plans and specifications; hence, no issue of fact was raised on that question. While not directly connected with this question, there is no evidence to contradict the testimony of Dailey that there was nothing in the plans and specifications, including the detail of one downspout, to put the contractor on notice that there was any defect therein concerning drainage[1] so there could be no triable issue on that fact.

---

[1] It would appear that the one who should have discovered such defect would be the contractor who installed the drains.

### 1. No Implied Warranty

For his contention of implied warranty in spite of compliance with the plans and specifications, plaintiff relies mainly on *Kuitems* v. *Covell* (1951) 104 Cal.App.2d 482 [231 P.2d 552], where the court held that in a contract to install a roof covering there was an implied warranty that the roof would not leak. However, there the situation was completely different from the case at bench. There, the court found that the defendants had used insufficient and improper materials. Further, the court found that the owner had informed the defendants that they would be required to provide drains for the roof, which the defendants did not do.

Likewise, the situation in *Aced* v. *Hobbs-Sesack Plumbing Co.* (1961) 55 Cal.2d 573 [12 Cal.Rptr. 257, 360 P.2d 897], also relied upon by plaintiff, may be distinguished from the situation in the instant case. In *Hobbs* there were no plans and the only specification was that the radiant heating system which Hobbs was to install would maintain a certain degree of heat. The court held that there was an implied warranty that the tubing which Hobbs chose to install was reasonably suited for its ordinary use. As pointed out in *Corporation of Presiding Bishop* v. *Cavanaugh* (1963) 217 Cal.App.2d 492, 505, fn. 2 [32 Cal.Rptr. 144], in the *Aced* case there were no specifications under which a particular type of tubing was required. In *Aced* the tubing which the contractor selected proved not to be fit for the use to which it was to be put. This is an entirely different situation from that in the instant case where the work and the materials and design complied completely with the plans and specifications.

In the *Cavanaugh* case, in an action upon an alleged implied warranty for the installation of a heating system, the court said (at p. 508): "There is no basis for an implied warranty of fitness of the installation since the work was done in accordance with the plans and specifications supplied by the owner. The applicable law is set forth in *Stevens* v. *Parkford,* 48 Cal.App. 131 [191 P. 699], wherein the court said at page 133: 'The contract for the refrigerating plant contained .full and complete specifications therefor, and not a scintilla of evidence, insofar as we are advised, was offered tending to show that, as installed, it was not constructed in strict accordance with the specifications therefor. In other words, as to the refrigerating plant, defendants got precisely what they contracted for, and there was no implied warranty that the machine would answer the particular purpose for which the buyers intended to use it. [Citations.]"

The latest case holding that no warranty other than that of good workmanship can be implied where the contractor faithfully complies with plans and specifications supplied by the owner is *Kurland* v. *United Pac. Ins. Co.* (1967) 251 Cal.App.2d 112 [59 Cal.Rptr. 258]. There the

defendant installed in an apartment house an air conditioning system in strict compliance with plans and specifications furnished by the owner which turned out to be inadequately designed for the purpose for which it was intended. The plaintiff, as does the plaintiff here, contended that there was an implied warranty in the contract between the owner and the contractors that the system to be installed would produce the desired result, The court said at page 117: "Since the plans and specifications were prepared by the owners' architect and not by the subcontractor, and since the subcontractor undertook to do the work in accordance with his specific proposal, we cannot reasonably conclude that the subcontractor assumed responsibility for the adequacy of the plans and specifications to meet the purpose of achieving 'a 30 degree variation from outside temperature for cooling.' "

The court also pointed out in *Kurland* that a problem of a kindred nature was presented in *Bush* v. *Jones* (3d Cir. 1906) 144 F. 942, where after completion of the work a cellar leaked badly. The court stated (at pp. 117-118): "The specifications had provided: 'The whole to be made perfectly water-tight and guaranteed.' In holding that the contractors were not liable the court reasoned as follows (144 F., at p. 943): 'It is claimed that the contractors by virtue of the last provision were bound at all hazards to make a water-tight job; that being, in terms, what they had not only undertaken but guaranteed to do. But to this we cannot accede. The guaranty was not absolute, but qualified. It extended to their own work only, and only so far as this was involved; to the result. The specifications, which were the work of the architect, and for which they could not be expected to assume responsibility, directed how the work should be done, and by this they were controlled. So far as this was calculated to make a water-tight cellar, they unquestionably guaranteed that it would be such. But that is all. It was not as though they were left to their own judgment; that which they were to do, as appears above, being specified in detail. . . . The owner having assumed to say by the specifications what was to be done, the contractors were relieved so far as they complied therewith. They guaranteed, not the sufficiency of this to produce the desired result, but merely the effectiveness of what they themselves did under it.' "

2.  Notice of Breach

In view of our decision that no implied warranty existed we deem it

unnecessary to consider the questions raised by defendants on the subject of lack of notice of breach of warranty.

The judgments are affirmed.

Pierce, P. J., and Regan, J., concurred.