[Civ. No. 35699. Second Dist., Div. Two. Sept. 7, 1971.]

SILVA & HILL CONSTRUCTION CO., INC., Plaintiff and Appellant, v. EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY, Defendant and Respondent.

916

## Counsel

William H. Brawner and Ralph McGookin for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Richard D. Martland, Deputy Attorney General, Harry S. Fenton, Kingsley T. Hoegstedt, Orrin F. Finch, Richard W. Bower, Charles R. Martin, Martin & Flandrick and Stephen H. Galton as Amici Curiae on behalf of Plaintiff and Appellant.

Spray, Gould & Bowers for Defendant and Respondent.

## Opinion

**COMPTON, J.**—Plaintiff Silva & Hill Construction Company, Inc. commenced this action against its insurer, Employers Mutual Liability Insurance Company, alleging defendant's failure to defend and pay claims as provided by the terms of a liability insurance policy. Judgment was in favor of the plaintiff for $18,283.38 plus interest.

Plaintiff appeals from a portion of the judgment disallowing recovery in the amount of $31,000 for one item of damage allegedly sustained by plaintiff.

Defendant did not appeal.

This court in an opinion filed November 20, 1970, affirmed the trial court's judgment. After granting a hearing our Supreme Court transferred this matter to this court "for reconsideration in light of section 14376 of the Government Code."

The pertinent facts are undisputed and unchanged from those discussed in our original opinion, a copy of which is appended. [*Post,* pp. 928-932].

In its petition for rehearing in this court and for a hearing in the Supreme Court, plaintiff urged that our opinion cast doubt on the validity of Government Code section 14376.

Following the Supreme Court's referral for reconsideration, the Engineering and Grading Contractors Association obtained permission of this court to file an amicus curiae brief challenging the constitutionality of Government Code section 14376. We, in turn, invited the Attorney General and the Department of Public Works to file amicus curiae briefs in response.

## The Applicability, Validity and Effect Of Government Code Section 14376

Section 14376 of the Government Code provides in pertinent part that "Every [state] contract *shall* contain a provision in regard to the time when the whole or any specified portion of the work contemplated shall be completed, and shall provide that for each day completion is delayed beyond the specified time, the contractor shall forfeit and pay to the State a specified sum of money, to be deducted from any payments due or to become due to the contractor." (Italics added.)

■ Section 14376 is an integral part of a comprehensive statutory scheme governing the erection, construction, repair and improvement by the state of its buildings, roads and other structures.[1] ■ The statute represents an express legislative effort to protect the State of California from the consequences of delay in the completion of state construction projects. ■ As such, section 14376 serves to protect the state in two ways. First, it insures that the state will be at least partially reimbursed for additional costs, lost public benefits, overhead expenses, etc., incurred as a result of the contractor's overrun. Secondly, it encourages the contractor to work towards a timely completion of the work.

California is not alone in its imposition of such late charges. Each of the fifty states and the federal government have devised similar provisions for the imposition of pre-set damages to be paid by the contractor. Nor is such a provision to be found only in state construction contracts. "It is commonly provided in building and construction contracts that there shall be deducted from the contractor's compensation a fixed sum for each day's

---

[1]Article 7, chapter 3, part 5, division 3, title 2 of the Government Code, in which section 14376 is codified, is entitled "Contract Requirements." The Legislature has officially designated the inclusive statutes as the "State Contract Act." (See Gov. Code, § 14250.)

delay in performing the contract beyond the day fixed therein." (5 Williston on Contracts (3d ed.) § 785, at p. 733; see also 5 Corbin on Contracts (1964 ed.) § 1072, p. 402.)

Plaintiff contends that the trial court erred in characterizing the late charge as a penalty. It is argued that section 14376 is a legislative determination that late charges imposed in state contracts are by law liquidated damages within the purview of Civil Code section 1671.[2]

We are unaware at this time of any cases in California which have considered the operation of section 14376 in light of the proscriptions of section 1670 of the Civil Code.[3] Courts in other jurisdictions have found that where a public entity and a private contractor expressly agree that indeterminable damages will result from the late completion of a highway, a precalculated late charge is binding on both parties. In *Six Companies of California* v. *Joint Highway Dist. No. 13,* 24 F.Supp. 346 (affd. 110 F.2d 620; reversed in part on other grounds 311 U.S. 180 [85 L.Ed. 114, 61 S.Ct. 186]) the court found that since it would be impossible to measure the damage resulting from tardy completion of a highway, a liquidated damage provision in the contract between a highway district and a construction company was binding on the construction company in that it conformed with the provisions of section 1671 of the Civil Code. Other jurisdictions have similarly bound construction companies to liquidated damage clauses where it was stipulated at the time the contract was drafted that late completion of the highway would cause incalculable inconvenience and damage to the public. (*Bethlehem Steel Corporation* v. *City of Chicago,* 350 F.2d 649; *Dave Gustafson & Co.* v. *State,* 83 S.D. 160 [156 N.W.2d 185].)

■ Statutes are to be interpreted and applied in the light of their historical background and evident objective. (*H. S. Mann Corp.* v. *Moody,* 144 Cal.App.2d 310, 320 [301 P.2d 28].) ■ " 'It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after

---

[2] Section 1671 of the Civil Code provides: "The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

[3] Section 1670 of the Civil Code provides: "Every contract by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in [section 1671]."

such general enactment.' " (*In re Williamson,* 43 Cal.2d 651, 654 [276 P.2d 593]; *People* v. *Gilbert,* 1 Cal.3d 475, 479 [82 Cal.Rptr. 724, 462 P.2d 580], and cases cited therein; see also 45 Cal.Jur.2d, Stats., § 120.) Civil Code section 1670 was enacted in 1872 and represents the Legislature's general desire to prevent the inclusion of penalty clauses in contracts absent the circumstances found in section 1671. Conversely, section 14376 was enacted in substantially its present form in 1909. Since that year the section has been made a part of the "State Contract Act." As noted, section 14376 has always been part of the state's comprehensive scheme governing its construction responsibilities and as such represents the Legislature's concern over the control and management of the millions of dollars spent annually on the construction of state highways and buildings.

 It is our conclusion that section 14376 of the Government Code is in effect a legislative determination that late charges imposed on a construction company by a state contract fall within the provisions of section 1671 of the Civil Code and as such are valid liquidated damages. This conclusion is compelled by the fact that section 14376 is a special statute enacted in response to unique circumstances. Thus, the character of the contracts to which section 14376 applies, the widespread use of liquidated damage provisions in such contracts, and the protection afforded the public by such provisions are factors which provide a reasonable basis on which the Legislature could properly take notice that the nature of state construction projects makes it "impracticable or extremely difficult to fix the actual damage" caused by a contractor's late completion of a state project. (Compare: *Robinson* v. *United States,* 261 U.S. 486, 488 [67 L.Ed. 760, 761, 43 S.Ct. 420].)

In the amicus brief filed by the Contractors Association it is urged that section 14376 is invalid in that it unconstitutionally sanctions the taking of property without due process of law. The thrust of the association's argument is that section 14376 does not provide adequate standards by which a "specified sum" is levied, and fails to provide for an administrative hearing procedure to determine the "specified sum."

The amicus brief of the Contractors Association fails to appreciate the status of plaintiff's appeal. The ultimate issue in the instant case is whether defendant's policy provided coverage for the damage sustained to the highway and for the $31,000 late charge. The facts presented do not call into question the constitutionality of the procedure by which the late charges were levied. Such an issue might be presented if plaintiff had contested the state's ability to withhold the sum from the money due under the contract.

Here neither party contests the *procedure* by which the state imposed the late charge on plaintiff, the question is who shall pay it.

Government Code section 14376 simply mandates the inclusion of a charge for tardy performance in state construction contracts. The implementation of this requirement is to be found in the contract between the parties and the standard specifications promulgated by the Department of Public Works.

■ In resolving the dispute between the parties to this action we need go no further than to conclude that the Legislature was well within its constitutional power in requiring such a provision in state contracts and in so doing exempted the late charges from the prohibition of Civil Code section 1670.

Assuming that we were to find section 14376 unconstitutional, such a result would not, as will be seen below, alter the final outcome of this appeal. If section 14376 did not properly sanction the imposition of the state's late charge, plaintiff would, as noted in our original opinion, still have failed to carry its burden of proof and defendant could not be held liable for plaintiff's loss.

■ In light of the above analysis, it is clear that the trial court erred in characterizing the $31,000 late charge as a penalty. This conclusion, however, is not determinative of plaintiff's appeal. The issue now framed by these facts is whether defendant's policy provided coverage for the late charge.

### THE POLICY'S COVERAGE

■ It is well established that it is " 'solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence. ■ Accordingly, "An appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence [citations], where there is no conflict in the evidence [citation], or a determination has been made upon incompetent evidence [citation]." ' " (*Parsons* v. *Bristol·Development Co.*, 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]; quoting from *Estate of Platt*, 21 Cal.2d 343, 352 [131 P.2d 825].) (See also *Kurland* v. *United Pac. Ins. Co.*, 251 Cal.App.2d 112, 114-115 [59 Cal.Rptr. 258].) Since there was no extrinsic evidence introduced at trial to aid in the interpretation of the insurance policy at issue we proceed to render our independent interpretation of the policy's provisions.

Plaintiff's contract with the state required plaintiff to provide various forms of insurance relevant to the construction of the highway. In its written contract with plaintiff the state specifically required plaintiff "with respect to the operations [it] performs within or adjacent to Railroad's property[4] or that of any of [its] subcontractors who do work within or adjacent to Railroad's property [to] perform, have issued and furnished in favor of Railroad, policy or policies of insurance in the Railroad Protective Liability Form as . . . specified." The contract thereafter specified under a paragraph entitled "Property Damage Liability" that such insurance was to "pay on behalf of [plaintiff] all sums which the insured shall become legally obligated to pay as damages because of physical injury to or destruction of property, including loss of use of any property due to such injury or destruction, hereinafter called 'property damage,' arising out of acts or omissions at the designated job site which are related to or are in connection with the work [on the road]."

The state also by way of its standard specifications (which were incorporated into the terms of the contract and thus into the insurance policy by reference) required plaintiff to "indemnify and save harmless the State of California, the Director of Public Works, the Engineer . . . from all suits or actions of every name, kind and description, brought for, or on account of any injuries or damages received or sustained by any person or persons, by or from the [plaintiff], his servants or agents, in the construction of the work or by or in consequence of any negligence in guarding the same, in improper materials used in its construction, or by or on account of any act or omission of the [plaintiff] or his agents."

Upon receiving notice of these insurance requirements plaintiff contacted defendant and defendant assured plaintiff that all coverage required by the state's contract would be provided. Specifically, defendant's policy included, along with other provisions, Endorsement 15 which was calculated to provide the necessary coverage. Coverage of Endorsement 15 was entitled "Contractual Property Damage Liability" and provided that defendant would "pay on behalf of [plaintiff] all sums which [plaintiff], by reason of the liability assumed by him under any written contract designated in the schedule, shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

---

[4]It is apparent from a map of the job site provided in the state's contract that the Southern Pacific Railroad Company maintained railroad tracks in close proximity to the projected roadway, along the entire length of the project.

On the same page of the policy as Coverage Z defendant listed numerous exclusions to the above coverage. Exclusion (h) excluded under Coverage Z "injury to or destruction of (1) property owned or occupied by or rented to the insured, or (2) . . . property used by or in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control; . . ."

Plaintiff contends that the language of the state's contract and specifications clearly required plaintiff and therefore defendant to provide coverage for *any* and *all* damage to the road. It argues that the word "property" in the contract and specifications refers to *all* property including the work itself. Defendant on the other hand maintains that the proper interpretation of the above provisions is that "property" refers to the railroad's property and/or to all property not in the "care, custody and control" of plaintiff, i.e., all property in the care, custody and control of third parties.

Policy language almost identical to that found in Coverage Z and Exclusion (h) was considered in *Volf* v. *Ocean Accident & Guar. Corp.*, 50 Cal. 2d 373, 374-375 [325 P.2d 987]. The plaintiff in *Volf* was a general contractor who had constructed a stucco house. Shortly before the building was completed cracks appeared on the exterior stucco of the house. Although the cracks were covered over, the damage to the exterior finish proved to be permanent. No damage was suffered to the wall of the house. Plaintiff was forced to restucco the exterior and thereafter sought to recoup his expenses from his insurer. The applicable terms of the policy provided that the policy did not apply to property which had been in the "care, custody or control" of the insured.

The court concluded that such language should be interpreted to preclude recovery by the insured for all damage to the cracked plaster.

In *Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co.*, 51 Cal.2d 558 [334 P.2d 881], the court considered a similar factual situation. The plaintiff in *Geddes* was a building contractor who ordered and installed several hundred aluminum doors into newly constructed houses. Sometime after installation the doors proved to be defective. Plaintiff secured a judgment against the manufacturer which had supplied the doors and then brought an action against the manufacturer's insurer to recover on the judgment. The manufacturer's insurance policy excluded coverage for ". . . injury to or destruction of (1) any goods or products . . . sold . . . by the Insured . . . out of which the accident arises." (*Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co., supra,* at p. 562.) The policy had provided coverage for loss "which the insured shall become obligated to

pay by reason of the liability imposed upon him by law or contract because of injury to or destruction of property, including the loss of use thereof, caused by accident." (*Geddes, supra,* at p. 562.) The court discussed *Volf* and rejected plaintiff's argument that the defective doors had caused a loss of good will and therefore "property damage" within the scope of coverage. The court noted that "Any breach of contract may harm the business of the injured party, and if sufficiently serious, may affect his goodwill. Such damages, however, are not commonly thought of as injuries to or destruction of property within the meaning of a public liability insurance policy. Defendant did not undertake to insure against all breaches of contract caused by accident. It required an injury to or destruction of property and excluded injury to or destruction of goods or products sold by the insured." (*Geddes, supra,* at p. 566.)

The *Volf* and *Geddes* rationales are applicable to our interpretation of the provisions of defendant's policy. The language used by defendant in Coverage Z and Exclusion (h) has seemingly obtained a secondary meaning within the industry and in the law. Thus, it has been held that such provisions limit the insured's coverage to property other than that on which the work is being performed. (*Volf, supra; Geddes, supra; Geddes & Smith, Inc.* v. *St. Paul Mercury Indem. Co.,* 63 Cal.2d 602, 608-609 [47 Cal. Rptr. 564, 407 P.2d 868]; *Rafeiro* v. *American Employers' Ins. Co.,* 5 Cal. App.3d 799 [85 Cal.Rptr. 701]; *Owens Pacific Marine, Inc.* v. *Insurance Co. of North America,* 12 Cal.App.3d 661, 666-667 [90 Cal.Rptr. 826].)

Damage to the road in the instant case is analogous to the plaster in *Volf,* or the aluminum doors in *Geddes.*

The damage to the road and the late charge resulting from that damage were the result of poor workmanship.

Plaintiff contracted to build and deliver in good condition a portion of a highway within a prescribed period of time. Because of the dereliction of its employees it failed to do so. This was simply a breach of its contract with the state. Coverage of such an eventuality was never contemplated by the insurance policy in question.

Plaintiff argues that Exclusion (h) is not applicable because the road was not within the "care, custody, or control" of plaintiff at the time of the accident. This contention is clearly untenable. The state's contract expressly provided that plaintiff would at all times prior to completion of the project retain ultimate responsibility over the work of its subcontractors. Indeed, it was this very requirement which caused plaintiff to repair the road even though plaintiff's subcontractors had caused the damage. Such constructive or proprietary control is all that the exclusion and the law

contemplate. (*Volf, supra*; *Karpe* v. *Great American Indem. Co.*, 190 Cal. App.2d 226, 232-233 [11 Cal.Rptr. 908]; see also 62 A.L.R.2d 1242.)

It is clear from the state's contract and the specifications that the state was concerned with the possibility of incurring liability to third persons for personal injury and property damage arising from work done within or adjacent to the railroad's property and the job site. The specifications, as noted, required plaintiff to "indemnify and save harmless the State of California" from all suits which might arise from the construction itself. On the other hand the specifications *did not* require plaintiff to indemnify the state "for any loss or damage that may happen to the work or any part thereof." Instead the specifications merely say that the state "shall not be answerable" for such loss or damage to the work.

The inference to be drawn from this distinction is clear. The state did not look to the required insurance policies for indemnification for any damage to the work itself. Such protection was provided for in plaintiff's performance bond. (See Code Civ. Proc., § 1185.1, subds. (c) and (d); and Civ. Code, § § 3235 and 3236, as effective January 1, 1971; Stats. 1969, ch. 1362, § 2, pp. 2776-2777, § 3, and § 11, p. 2783; see also *Rafeiro* v. *American Employers' Ins. Co.*, 5 Cal.App.3d 799, 808 [85 Cal.Rptr. 701].) Clearly defective workmanship was intended to be a legal responsibility for which plaintiff was singularly "answerable." Such responsibility was not an additional liability assumed by plaintiff under contract; rather it was a responsibility which is personally undertaken by each contractor who contracts with the state. Such a division of responsibility is not capriciously made.

"Its effect is to make the manufacturer or contractor stand its own replacement and repair losses while the insurer takes only the risk of injury to other property. For example, suppose in the *Volf* case the contractor had to remove the defective stucco and this could not be done without damaging the structure of the house. The injury to the house would be covered, but the loss caused by having to remove the defective stucco would not be. This distinction is significant. Replacement and repair costs are to some degree within the control of the insured. They can be minimized by careful purchasing, inspection of material, quality control and hiring policies. If replacement and repair costs were covered, the incentive to exercise care to or to make repairs at the least possible cost would be lessened since the insurance company would be footing the bill for all scrap. Replacement and repair losses tend to be more frequent than losses through injury to other property, but replacement and repair losses are limited in amount since the greatest loss cannot exceed the cost of total replacement. If the

insured will stand these losses, insurance can be provided more cheaply since the company will be freed from administering many small claims for repairs, and it can set a rate for the more unusual risk of injury to property other than the contractor's work or product. This risk can be the hazardous one since there are no natural limitations on the damage the contractor might do to a homeowner's or a neighbor's property." (13 Stan.L.Rev. pp. 825-826.)

 It is our conclusion that the state never intended to require and defendant never intended to provide coverage for the damage suffered to the work. It follows that insofar as the $31,000 late charge was proximately caused by such damage, the late charge was not covered by defendant's policy.

## OTHER THEORIES OF LIABILITY

Plaintiff urges a separate theory of liability by which defendant would be held to pay the $31,000 late charge. It is argued that since defendant's policy provided coverage to "defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; . . ." defendant was bound (1) to defend plaintiff against the Copp suit; and (2) to intervene on plaintiff's behalf in plaintiff's dispute with the state.

 "The duty to defend . . . does not turn upon the ultimate adjudication of coverage but upon the facts known to the insurer at the inception of the third party's suit against its insured." (*State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co.,* 9 Cal.App.3d 508, 526 [88 Cal.Rptr. 246].)

 "An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy." (*Gray* v. *Zurich Insurance Co.,* 65 Cal.2d 263, 276-277 [54 Cal. Rptr. 104, 419 P.2d 168]; *Paramount Properties Co.* v. *Transamerica Title Ins. Co.,* 1 Cal.3d 562, 571 [83 Cal.Rptr. 394, 463 P.2d 746].)

 As demonstrated above the policy issued by defendant never contemplated coverage for the damages suffered. Exclusion (h) clearly limited coverage to property other than the work itself. It follows that the potential of liability under the policy did not arise. Indeed, there was no combination of allegations which could have given rise to the potential of liability under these facts.

The instant case is distinguishable from *Gray, supra,* in other equally significant ways. First, Exclusion (h) was set out in a "conspicuous, plain

and clear manner." (Cf. *Gray* v. *Zurich Insurance Co., supra,* at p. 273; *Steven* v. *Fidelity & Casualty Co.,* 58 Cal.2d 862, 878 [27 Cal.Rptr. 172, 377 P.2d 284].) Thus, it cannot be reasonably said that defendant's policy gave rise to inherent uncertainties in the intended scope of coverage by secreting its exclusions in fine print.

The major distinction between the case at bench and *Gray, supra,* is the manner in which defendant's alleged duty to defend arose. In *Gray,* the insurer was asked to defend against a suit brought by a third party who alleged that the insured had assaulted him. Here, the suit brought by Copp dealt not with tortious bodily injury or property damage suffered by Copp but with a contract dispute over unpaid fees for services rendered. The charges assessed by the state against plaintiff arose purely as a contractual dispute and not by way of a suit seeking damages for injury to property or a loss of use there. The duty to defend could not extend to requiring the insurer to take affirmative action to recover money withheld by the state. Accordingly, defendant was never obligated to defend either against the state's action or the suit brought by the subcontractors.

### DISPOSITION OF APPEAL

Having concluded that the policy in question, as a matter of law, did not cover the accident in question it follows that the late charges which were a result of the delay caused by the accident were not covered by the policy.

Inherent in this result is the conclusion that the trial court was in error in awarding plaintiff any damages at all.

However, since defendant did not appeal that portion of the judgment which was in favor of the plaintiff, we must affirm the judgment.

The judgment is affirmed.

Roth, P. J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 4, 1971.

APPENDIX

## OPINION

**COMPTON, J.**—Plaintiff Silva and Hill Construction Company, Inc., commenced this action against its insurer, defendant Employers Mutual Liability Insurance Company, alleging failure to defend against and failure to pay claims covered by the terms of a liability insurance policy. Judgment was in favor of the plaintiff for $18,283.38 plus interest.

Plaintiff appeals from a portion of the judgment disallowing recovery in the amount of $31,000 for one item of alleged damage sustained by plaintiff.

Defendant has not appealed.

In early 1960, plaintiff, a licensed engineering contractor, entered into a contract with the State of California to construct a 9.8-mile strip of highway in Santa Barbara County. The state contract required plaintiff to secure liability insurance "to pay on behalf of the insured [plaintiff] all sums which the insured shall become legally obligated to pay as damages because of physical injury to or destruction of property, including loss of use of any property due to such injury or destruction, hereinafter called 'property damage,' arising out of acts or omissions at the designated job site which are related to or are in connection with the work described in [the job description] . . . ."

In March of 1960, pursuant to this requirement plaintiff ordered and defendant issued its comprehensive general liability policy which provided in pertinent part that defendant would ". . . pay on behalf of the insured all sums which the insured, by reason of the liability assumed by him under any written contract designated in the schedule, shall become legally obligated to pay as damages because of injury to or destruction of property including the loss of use thereof, caused by accident."

An endorsement to the policy specifically excluded injury to property owned or occupied, or under the care, custody or control of the insured, or property over which he was exercising physical control.

In March of 1962, plaintiff, having completed the pouring of the concrete highway, engaged a subcontractor, Copp Paving Company, to pave a two-foot asphalt shoulder.

Copp Paving Company, in the course of constructing the asphalt shoulder, broke the edge of the concrete along the full length of the 9.8-mile strip of highway. The subcontractor also oversprayed the concrete with an asphaltic solution.

Copp Paving Company refused to make the necessary repairs and plaintiff as general contractor was forced to do so. As a result, plaintiff was delayed 62 calendar days in completing the project.

Plaintiff's contract with the state contained a liquidated damage clause providing that for each day delay in completing the contract beyond the established completion date, plaintiff would forfeit $500.

Consequently, the state withheld $31,000 from its payment to plaintiff.

Plaintiff sought to transfer the repair costs to Copp Paving Company by withholding an equal amount from its final payment made to Copp.

On July 11, 1962, Copp Paving Company filed suit in the Superior Court of Los Angeles County to recover the contract money withheld by plaintiff. Plaintiff answered Copp's complaint and filed a cross-complaint and counterclaim. Subsequently, in 1965, plaintiff settled with Copp out of court.

At the time of the damage to the concrete, plaintiff advised defendant of the damage and of the possibility of plaintiff filing a claim thereon. Prior to the Copp settlement plaintiff notified defendant that both the damage to the concrete paving and the Copp lawsuit, as far as plaintiff was concerned, were matters within the scope of its policy.

On July 20, 1965, defendant denied all coverage.

On March 29, 1966, plaintiff filed suit to recover the cost of repairing the concrete, attorney's fees paid in the litigation of the Copp suit, and the amount deducted as a late charge by the state from plaintiff's final payment.[1]

The trial court concluded that defendant's policy of insurance provided coverage to plaintiff for the cost of repairs of the broken cement paving in the sum of $8,767.77, the costs of repair and removal of the asphalt over-spray damage in the sum of $9,515.61, the sum paid by plaintiff to Copp Paving in settlement of its lawsuit against plaintiff in the sum of $14,500 and the attorney's fees incurred by plaintiff in the defense of the Copp Paving lawsuit in the sum of $7,500. This total of $40,283.38 reduced by an offset in the amount of $21,305.92, the amount withheld by plaintiff from the sums originally due Copp Paving Company, resulted in a net award to plaintiff of $18,977.46.

Plaintiff does not appeal from this portion of the court's judgment.

The court further found that though the damage to the concrete caused the 62-day delay for which the plaintiff's final payment from the state was reduced by $31,000 ($500 per day), plaintiff could not recover therefor. The court based this conclusion on the finding that, "this charge for delay was in the form of a penalty exacted by the State of California and was not in the nature of a charge for loss of use for its property namely the highway belonging to the state which was damaged."

The trial court apparently concluded that even though the damage to the cement paving was the proximate cause of the $31,000 late charge and thus otherwise covered by plaintiff's policy,[2] defendant was not liable therefor because the late charge was

---

[1]During trial plaintiff amended its complaint to conform to proof to include as damages the state's withholding of $31,000 for failure to complete the contract on time.

[2]Section 530 of the Insurance Code provides: "An insurer is liable for a loss of which a peril insured against was the proximate cause, although a peril not contemplated by the contract may have been a remote cause of the loss; but he is not liable for a loss of which the peril insured against was only a remote cause."

found to be (1) a penalty and (2) not a charge for loss of use of the damaged property.

Plaintiff contends that the state's contract characterization of the charge as liquidated damages is logically based on loss of use of the highway and that the trial court's finding to the contrary is not supported by the evidence.

Section 1670 of the Civil Code provides: "Every contract by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in [section 1671]."

Section 1671 of the Civil Code provides: "The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

It is well established that unless a clause providing for liquidated damages falls within the provisions of section 1671 of the Civil Code, it is invalid. (See *Better Food Mkts.* v. *Amer. Dist. Teleg. Co.*, 40 Cal.2d 179, 184 [253 P.2d 10, 42 A.L.R.2d 580]; *Dyer Bros. Golden West Iron Works* v. *Central Iron Works*, 182 Cal. 588, 593 [189 P. 445]; *Long Beach etc. Dist.* v. *Dodge*, 135 Cal. 401, 405 [67 P. 499].)

Similarly, it is settled law that "the burden is on the party seeking to rely upon a liquidated damage provision in a contract to plead and prove facts showing impracticability." (*Better Food Mkts.* v. *Amer. Dist. Teleg. Co., supra,* at p. 185.)

It follows that "without an allegation bringing [the plaintiff's] case within the exception the pleading in that regard is insufficient, the presumption being, [that] in the absence of such allegation, such agreement is void." (*Thomas* v. *Anthony,* 30 Cal.App. 217, 220 [157 P. 823].)

In the case at bar we are not presented with the same factual situation facing the court in the above cases. Plaintiff is not seeking to enforce the provisions of a liquidated or stipulated damages clause directly against a party to the original contract. However, the policy underlying sections 1670 and 1671 of the Civil Code and the rules cited above are applicable to any action in which a party relies for recovery upon a liquidated damage clause in a contract.

Plaintiff seeks to rely upon the liquidated damage provision in its contract with the state in order to recover damages from defendant. Plaintiff thus had the burden of pleading and proving that the liquidated damages clause in the contract with the state did not fall within the condemnation of section 1670 of the Civil Code. Stated affirmatively, plaintiff had the burden of bringing his case within the provisions of section 1671 of the Civil Code. Plaintiff failed to carry this burden.

The record is devoid of testimony concerning the impracticability of fixing ascertainable damages at the time plaintiff entered into its contract with the state. The only evidence produced by the plaintiff on this issue was the contract itself. The contract stipulates that damages for failure to complete the contract within 400 days were unascertainable and describes such damages as "Liquidated Damages." Such language is not binding on the trier of fact and, in the absence of further evidence, is mere labelling. (See *Atkinson* v. *Pacific Fire Extinguisher Co.,* 40 Cal.2d 192, 198 [253 P.2d 18]; 1 Witkin, Summary of Cal. Law (1960) Contracts, § 173.)

As the court said in *Greenbach Bros., Inc.* v. *Burns,* 245 Cal.App.2d 767, 771 [54 Cal.Rptr. 143], "The recital of the statutory language in the liquidated damage clause of a contract is but the conclusion of the parties and does not foreclose the court from a full inquiry into the facts."

No evidence was offered to indicate that the parties to the contract made an effort to estimate the actual damages that might be suffered by the state in the event plaintiff failed to complete the contract on time.

It is well established that the amount stipulated as liquidated damages must be a reasonable one and must represent the result of a reasonable endeavor by the parties to estimate such a reasonable compensation for possible damage. (See *Caplan* v. *Schroeder,* 56 Cal.2d 515 [15 Cal.Rptr. 145, 364 P.2d 321]; *Rice* v. *Schmid,* 18 Cal.2d 382, 386 [115 P.2d 498, 138 A.L.R. 589]; *Greenbach Bros., Inc.* v. *Burns, supra,* at p. 772.)

With only the contract in evidence the court could reasonably have concluded that plaintiff had failed to meet its burden.

With the exception of cases where the facts are not in dispute and admit to but a single conclusion, the question whether it is impracticable or extremely difficult to fix actual damages is one for the trier of fact. (*McCarthy* v. *Tally,* 46 Cal.2d 577, 583 [297 P.2d 981].)

"[I]n examining the sufficiency of the evidence to support a questioned finding, an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion. Every substantial conflict in the testimony is, under the rule which has always prevailed in this court, to be resolved in favor of the finding." (*Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140, 142 [134 P. 1157]; see also *Butler* v. *Nepple,* 54 Cal.2d 589, 597 [6 Cal.Rptr. 767, 354 P.2d 239]; *Brinkmann* v. *Liberty Mutual etc. Ins. Co.,* 63 Cal.2d 41, 44 [45 Cal.Rptr. 8, 403 P.2d 136].)

In light of plaintiff's demonstrated failure to carry its burden of defeating the presumption that the late charge was a penalty, the court's finding must be affirmed.

The court also found that the late charges were not based on loss of use of the property damaged. Thus, the court in essence found that the late charges were not damages covered by the policy.

Plaintiff offered no evidence to the contrary. Considering the plain language of plaintiff's policy and the lack of proffered evidence on the exact nature of the late charge, we cannot say as a matter of law that the $31,000 late charge was assessed by the state to compensate for the loss of use of the damaged property.

An appealing party may not complain that an adverse finding was not supported by the evidence, when the burden of proof to establish a contrary finding rested upon him and he failed to carry that burden.

Finally, plaintiff urges that the force of *Arenson* v. *National Auto. & Cas. Ins. Co.,* 48 Cal.2d 528 [310 P.2d 961], compels a finding of defendant's liability.

*Arenson* is cited with approval in *Grey* v. *Zurich Insurance Co.,* 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168], to the effect that an insurer who defaults in its agreement to defend its insured is bound to reimburse the insured for any obligation reasonably incurred.

Plaintiff's argument is as follows: defendant denied all coverage and as a consequence failed to defend plaintiff against the state's claim for failure to complete the contract on time. Therefore, according to plaintiff, defendant cannot now be heard to question the validity or the basis of the state's claim which plaintiff paid.

This argument, of course, is based on the fact that the trial court found that defendant's policy did cover the accident in question.

It is apparent to us that the clear intent of the state's contractual requirement of insurance coverage and the defendant's policy issued in contemplation thereof was to indemnify the state against liability to third parties.

In this regard, the court's finding that the policy covered the damage to the concrete is highly questionable. This is especially true when the above referenced exclusion of property under the control of the plaintiff is considered.

In any event, it is clear that whatever considerations led the trial judge to con-

clude that the policy covered the damage to the concrete, there is no basis for concluding that the policy covered plaintiff's own breach of its contract with the state.

Within the purview of section 530 of the Insurance Code, the peril insured against here could at best be said to be only a "remote cause" of the loss.

The judgment is affirmed.

Roth, P. J., and Herndon, J., concurred.